## J. B. CRANFILL ET AL. v. S. A. HAYDEN.

No. 1284. Decided May 12, 1904.

**1.—Libel—Charge—Harmless Error.**

Where the libel charged consisted in the publication of one instrument, if any part of it was libelous the court should charge that the document was a libel and need not specify the parts which were so; and if, in undertaking to specify the libelous portion, he selected passages not defamatory, the error was harmless if any part of the document was libelous. (P. 559.)

**2.—Libel—Conclusion from Fact Stated.**

See document in which words calculated to bring the plaintiff into hatred, contempt or ridicule are held not to be stated as mere conclusions of the writer from facts stated in the document, and to be libelous if false and maliciously published. (Pp. 558, 560, 561.)

**3.—Privileged Communication—Malice in Whole or in Part.**

It is not necessary that malice be the controlling motive in publication, to deprive a defendant of the protection accorded conditionally privileged communications; one acting from combined motives of malice and duty to the public becomes liable. But see charges criticised, though correctly presenting this view. (Pp. 561-563.)

**4.—Same—Charge.**

An instruction that the existence of ill will did not establish malice unless shown to have caused the publication should have been given on request. (Pp. 563, 564.)

**5.—Privileged Communication—Falsity—Burden of Proof.**

The burden is on defendants to show the truth of a defamatory publication, conditionally privileged, but deprived of such privilege if malicious and false; the presumption of innocence attaches. (Pp. 564-566.)

**6.—Evidence—Conspiracy—Declarations.**

Though, upon a charge of conspiracy, declarations of one of the parties as to their intention to do what was afterwards done by them may be admissible, where the thing stated to be intended was not libelous, the declaration as to the agreement to do it was not admissible as evidence that the libel was concerted. (Pp. 566-568.)

**7.—Evidence—Libel—Charge of Falsehood.**

Where libel is charged in accusing plaintiff of publishing false and slanderous statements concerning defendant and the truth of the charges he is charged with publishing put in issue by defendant, evidence to show them false may be introduced by plaintiff. (Pp. 568, 569.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Hayden sued Cranfill and others for libel, and had judgment, which was affirmed on appeal by defendants, who thereupon obtained writ of error.

*Henry & Henry, L. J. Truett, R. B. Allen, L. C. Alexander,* and *Crane, Greer & Wharton,* for plaintiffs in error.—In order to make the testimony of the witness Tanner admissible it was necessary to prove the conspiracy alleged in the petition, and not some other agreement. There being absolutely no evidence that Maxwell, with the defendants, or any of them, had entered into any agreement or conspiracy, secretly or openly, to instigate a systematic series of false, slanderous and libelous circulations, objections and charges of and concerning the plaintiff, or of and concerning his newspaper and its policies, his business, his doctrinal church views and denominational policies, with the view and specific intent to injure plaintiff in his moral, religious and social standing, and to bring him into contempt before the community at large, the Baptist denomination and the religious world, and to break down and destroy the plaintiff's business, and thereby build up other newspapers owned and published and controlled by the defendants, or some of them, the admission of Maxwell's declarations testified to by Tanner, was unauthorized by law, and was reversible error. Cox v. State, 8 Texas App., 291; Avery v. State, 10 Texas App., 199; Lawson v. State, 20 Ala., 65; Johnson v. State, 29 Ala., 62. Declarations made after the formation of the conspiracy are alone admissible. McGraw v. Commonwealth, 20 S. W. Rep., 279; Wilson v. People, 94 Ill., 299; State v. Moberly, 121 Mo., 604; People v. Irwin, 77 Cal., 494; Benford v. Sanner, 80 Am. Dec., 545, 40 Pa. St., 9. Something more than mere passive cognizance must be proven. Evans v. People, 90 Ill., 384; United States v. Lancaster, 44 Fed. Rep., 896; Hall v. State, 31 Fla., 176; State v. Grant, 86 Iowa, 216; Work v. McCoy, 87 Iowa, 221.

Even if there be proof that the defendants had agreed to keep the plaintiff out of the convention, that would be a lawful agreement, and this was conceded by the Court of Civil Appeals and by opposing counsel, unless it could be further shown that there was an agreement to keep him out by the publication of a libel. Jarrell v. Sproles, 49 S. W. Rep., 904, 908; Landis v. Campbell, 79 Mo., 433; O'Donovan v. Chatard, 97 Ind., 421; Bouldin v. Alexander, 15 Wall., 131; Watson v. Jones, 13 Wall., 679.

The denial of a seat to plaintiff was the act of a corporation and defendants were not liable therefor, their votes not being shown to have affected the result. 1 Thompson on Corp., secs. 846-848; Evans v. Philadelphia Club, 50 Pa. St., 107.

Although Mays and Hanks knew the contents of the challenge, yet, inasmuch as they had not entered into any agreement or conspiracy with Maxwell to keep Hayden out of the convention by unlawful means, that is, by the publication of a libel, the declaration of Maxwell is not admissible as against them, he not being a coconspirator.

97 Supreme—35.

The Court of Civil Appeals erred in overruling the thirty-fourth assignment of error, which is as follows: "The court erred in refusing to charge, at the request of defendants, substantially, that the defendants had a right to agree to keep the plaintiff out of the convention at San Antonio, and that such a combination would give plaintiff no cause of action, unless it was agreed in such combination, that, as a means of keeping him out of the convention, the publication of the challenge in question, or one of a similar kind embodying libelous matter, should be presented and read to the convention for the purpose of injuring him, the said Hayden."

The Court of Civil Appeals erred in overruling the eleventh assignment of error, which is as follows: "The court erred in charging the jury, in substance and effect, and in repeating it several times, that 'if the proof shows that anyone who published the libel upon said privileged occasion was actuated, either in whole or in part, by malice so to do, then he has forfeited his privilege of the occasion, and as to him the occasion was not a privileged occasion.' And again, in saying, 'that the defendants were not liable for publishing such matter on a privileged occasion, if they believed the libelous statements to be true, and believed it to be their duty to give publicity to the said libelous statements on that occasion, and were actuated solely by a sense of such duty in so publishing said libel.' And again: 'But if, on the contrary, anyone who so took part in said publication of said challenge, was in fact prompted, either in whole or in part, by malice in so publishing said challenge, then as to him such occasion was not a privileged occasion.' And again, in paragraph 7 of said charge: 'That if, under the foregoing instructions, you believe, from the testimony before you that any defendant or defendants took part in the publication of the said libels at the San Antonio convention, that in so doing, he or they were actuated, either in whole or in part, by malice,' then substantially, 'that the plaintiff is entitled to recover against them, unless the allegations in said libel are found to be true,' because such is not the law of this case, in that it destroyed the plea of privilege, although malice was not the controlling cause with them, or if its influence was slight, and the desire to do their duty the controlling cause."

The Court of Civil Appeals erred in overruling the twelfth assignment of error, which is as follows: "The court erred in refusing to give the several special charges asked herein by the defendants, to the effect that before the jury could find against the several defendants, or any of them, on their plea of privilege, they must believe that said defendants participated in the publication of the challenge complained of, and that the controlling motive of such defendants in so doing was to injure the plaintiff, and not to do their duty to their denomination."

The Court of Civil Appeals erred in overruling the thirteenth assignment of error, which is as follows: "The court erred in refusing to give special charges asked by these defendants which in substance and effect stated, that, although the defendants who participated in publishing

said libelous matter were unfriendly to the plaintiff and did not like him, yet, if they believed that the matter in question was published as duty to their denomination, and not because they disliked the plaintiff and sought to injure him, they would find for such defendants under the plea of privilege."

The Court of Civil Appeals erred in overruling the fourteenth assignment of error, which is as follows: "The court erred in refusing the special charge asked by the defendants, in substance and effect, that, although the jury may have believed that if the said defendants who participated in the publication of said challenge might not have published same had they been friendly to plaintiff, in other words, that they might have condoned his past conduct, had they been entirely friendly with him, and that it was the fact that they were unfriendly to the plaintiff that enabled them to discharge what they honestly believed to be their duty to their denomination, that they would not find against them on their plea of privilege."

The court erred in overruling the thirtieth assignment of error in the motion for a rehearing, which is as follows: "This court erred in not charging the jury in substance as asked, as follows: 'That notwithstanding you may believe from the evidence that the charges in the challenge, or one or more of them, were untrue, and that the defendants were not entitled to a verdict on their plea of the truth of the challenge, still, on their plea of privilege, you will find in favor of each and every defendant as to whom you do not believe his express malice against plaintiff was the cause of his publishing it. Even if any defendant had ill feeling against the plaintiff, still, if this ill feeling was not the cause which induced him to make such publication, you shall not find against such defendant.'"

The Court of Civil Appeals erred in overruling the twenty-fourth assignment of error, which is substantially as follows: "The court erred in charging the jury that the burden of proof upon their plea (issue) that the libel was true, rested upon the defendants, notwithstanding their plea of general denial and not guilty and plea of privilege." Holt v. Parsons, 23 Texas, 20; Express Co. v. Copeland, 64 Texas, 359; Runge v. Franklin, 72 Texas, 589; Edwards v. Chandler, 14 Mich., 475; Smith v. Smith, 3 Law. Rep. Ann., 53; Sullings v. Shakespeare, 46 Mich., 411; Chapman v. Calder, 14 Pa. St., 369; Winebiddle v. Porterfield, 9 Barr, 137; Travis v. Smith, 1 Barr, 234; Briggs v. Garrett, 111 Pa. St., 404; McIntyre v. Bean, 13 U. C. Q. B., 540; Ramsey v. Cheek, 13 S. E. Rep., 775; Cameron v. Cockran, 42 Atl. Rep., 457; Remington v. Congdon, 2 Pickering, 310; Bradley v. Heath, 12 Pickering, 163; Fowles v. Bowen, 30 N. Y., 25; O'Donague v. McGovern, 23 Wend., 31; Young v. Richardson, 4 Ill. App., 364; Howard v. Thompson, 21 Wend., 319; Chubb v. Griffin, 13 Texas, 393; Cuney v. Dupree, 21 Texas, 218; Sutor v. Wood, 76 Texas, 407.

The Court of Civil Appeals erred in overruling the thirty-second assignment of error, which is as follows: "This court erred in not hold-

ing that the frequent repetition of the erroneous charge, to the effect that if malice entered into the publication, either in whole or in part, that the plea of privilege would be destroyed, was reversible error."

The Court of Civil Appeals erred in overruling the twenty-sixth assignment of error, which is substantially as follows: "The court erred in refusing special charge number —— asked by the defendants, which was substantially as follows: 'You are instructed that the uncontradicted evidence in this case showed that the defendant J. B. Cranfill was corresponding secretary and superintendent of missions of the Baptist General Convention and that as such corresponding secretary he had no official relations to or with associational missions. You are therefore instructed that the uncontradicted evidence shows that the East Fork collection, about which the witness Yarrell and others testified, was taken for associational missions only. For that reason you are therefore instructed that you need not consider that evidence at all, and same is hereby withdrawn from you, for the reason that its truth or falsity in no way affects the official relations of the said Cranfill to the Baptist General Convention, or affects the truth or falsity of the libelous charges complained of in plaintiff's petition.' "

The Court of Civil Appeals erred in overruling the twenty-seventh assignment of error, which is as follows: "The court erred in admitting evidence of S. L. Yarrell and other evidence offered by the plaintiff, in reference to what was known as the East Fork collection; that is to say, tending to show that J. B. Cranfill, at the request of the associational authorities, took up a collection there, and seeking to make the impression that he had stolen or embezzled ten dollars out of said collection, this evidence being offered in support of that part of their pleadings embodying 'My Reply.' (1) Because the evidence conclusively shows, it was known and admitted, that this collection was for associational missions only; that Dr. J. B. Cranfill had no connection with associational missions; that what he was doing, he was doing at the request of the association; that his office as corresponding secretary of the Baptist General Convention imposed no duties of taking collections for associational missions on him, and that therefore, it became immaterial whether the allegations in 'My Reply' were true or not, because it in nowise affected the truth or falsity of the matters set up in the challenge, which constitutes the only issue in this case."

The Court of Civil Appeals erred in overruling the seventh assignment of error in the motion for a rehearing, which is as follows: "This court erred in holding that the following language of the alleged challenge is libelous per se: 'First. He (Hayden) has violated the spirit and letter of the constitution of this body, which says: "The object of this convention shall be missionary and educational, the promotion of harmony of feeling and concert of action among Baptists, and a system of operative measures for the promotion of the interests of the Redeemer's kingdom." This fundamental law he has violated by a ceaseless and hurtful war upon the plans, policies, work and workers of this

convention, thus misusing his privilege as a member, and instead of harmony, producing discord, contention, strife and animosities, which has resulted in a serious and permanent injury to the work undertaken by the convention, and which has rendered him utterly unworthy of membership in this convention.' Because it shows on its face that the libelous language complained of is but a conclusion from the facts stated, and that the facts stated are not libelous per se." The charge that he was utterly unworthy of membership in the convention being plainly a conclusion from the facts stated, and the facts as stated not constituting a libel, the conclusion deduced therefrom can not be libelous.

The Court of Civil Appeals erred in overruling the eighth assignment of error in the motion for a rehearing, which is as follows: "This court erred in holding that the following paragraph of the said challenge complained of, is libelous per se. Second. He is and has been in open and notorious opposition to the convention and its mandates. First. (a) A strong resolution of censure and condemnation of his course in attacking the board of directors of the convention was passed at Houston, and that mandate was "that he desist from such attacks in the future." This mandate he has held in utter contempt and has refused to obey. He has violated it by open and notorious attacks upon the superintendent of missions of this body, and upon its board of directors, and upon the plans of work adopted by this convention. Second. (b) Because of his ceaseless attacks upon the previous secretary of this convention for the years 1891 and 1892, whose report had been audited by the board, and further passed upon by the convention and found correct, and was again passed upon by this body at Marshall and found correct. Because he still attacked the integrity of said report this body did again at Houston review said report, and found it correct, and did by resolution state that 'further agitation of this matter would show a distrust and an evil motive, which would be dishonorable in the agitator.' Against this action he did not speak or vote at the time. He has, since said convention, viciously attacked said convention and the character of said secretary and the action of this body thereon, and has by so doing convicted himself of dishonorable conduct.' Because it shows on its face that the libelous language complained of is but a conclusion from the facts stated, and that the facts stated are not libelous per se." The conclusion that the plaintiff had been guilty of dishonorable conduct was plainly drawn from the facts stated, rather than from facts that were not stated, which statement of facts not being libelous in themselves, the conclusion was not libelous.

The Court of Civil Apeals erred in overruling the ninth paragraph of the motion for a rehearing, which is as follows: "This court erred in holding that the following paragraph of the said challenge complained of, is libelous per se: 'Fourth: He is unworthy of a seat in this convention on moral grounds. He has assailed the public and private character of the superintendent of missions and the board of directors, by falsely accusing them of dishonorable practices in the use

of mission money. He has falsely accused them of conspiracy among themselves, and with other brethren and churches, city councils and others, to thwart the will of the Baptists of Texas. He is a breeder of strife and contention among the brethren and associations.' Because it shows on its face that the libelous language complained of is but a conclusion from the facts stated, and that the facts stated are not libelous per se."

The Court of Civil Appeals erred in overruling the tenth assignment of error in the motion for a rehearing, which is as follows: "This court erred in holding that the following paragraph of the said challenge complained of is libelous, per se: 'Fifth: That said course of conduct has been pursued by him to such a length of time, and with such continuous and persistent malice, and traduction toward the convention, its officers, boards and objects and in spite of repeated admonitions and mandates of this convention, as to convict said Hayden as being an incorrigible foe to the whole organization and work of the convention, and to render his connection with it a standing menace to the life of the whole body, and to the cause of religion, morality and education as represented by it.' Because it shows on its face that the libelous language complained of is but a conclusion from the facts stated, and that the facts stated are not libelous per se."

The Court of Civil Appeals erred in overruling the fifty-third assignment of error, which is substantially as follows: "The court erred in stating to the jury that any portion of the challenge in question was libelous per se, except that which said that the plaintiff was unworthy of a seat in the convention on moral grounds, and on this point the court should have charged the jury that the immorality referred to was libelous statements with the circulation of which the challenge charged the said plaintiff."

The Court of Civil Appeals erred in overruling the forty-fourth assignment of error, which is substantially as follows: "The court erred in using the following language in its charge: 'In paragraph 1 of the aforesaid challenge [meaning the challenge complained of] it is alleged that the plaintiff did certain things, and that the doing of these things has "rendered him utterly unworthy of membership in this convention." Said allegation that said alleged conduct "has rendered him utterly unworthy of membership in this convention," is a libel.' Because the same is not libelous per se."

The Court of Civil Appeals erred in overruling the forty-fifth assignment of error, which is substantially as follows: "The court erred in using the following language in its charge: 'In paragraph 2 of said challenge [meaning the challenge complained of in plaintiff's petition] it is alleged that the plaintiff did certain things, and "that he has by so doing convicted himself of dishonorable conduct." Said allegation "that he has by so doing convicted himself of dishonorable conduct," is a libel.' Because said allegation was not libelous per se, in that it was shown by the connection in which it was used, that the dishonorable

conduct mentioned in said challenge was the dishonorable conduct defined by the General Convention held at Houston in 1896, in which the plaintiff participated, and in the formation of which definition he acquiesced and consented."

The Court of Civil Appeals erred in overruling the forty-sixth assignment of error, which is substantially as follows: "The court erred in using the following language in its charge: 'In paragraph 4 of the said challenge it is alleged that the plaintiff is "unworthy of a seat in this convention on moral grounds." Said allegation "that plaintiff is unworthy of a seat in this convention on moral grounds," is a libel.' Because the same was not libelous per se, in that the connection in which the language was employed showed that the moral grounds therein mentioned were the fact that he had opposed the work of the convention, and had circulated charges against the defendants, and those engaged with them in the convention work, which were not true, and which were hurtful to the work in which they were engaged."

The Court of Civil Appeals erred in holding that the challenge showed upon its face, considered as a whole, that the challenger and his associates sought to have the plaintiff excluded from the convention on grounds other than that his insubordination and criticism had rendered him an undesirable member, but because he was morally unworthy to sit in conference with his fellow churchmen; because the language of the challenge fairly construed in the connection in which it was used, shows upon its face that the conclusion that he was morally unfit to sit in the convention with them was based on the facts stated in the challenge, and was a conclusion therefrom, and not a conclusion from other facts not stated." McCaleb v. Smith, 22 Iowa, 242, 245; Dunnell v. Fiske, 11 Met., 551; Stokes v. Arey, 53 N. C., 66; 13 Am. and Eng. Enc. of Law, old ed., p. 397; Fawsett v. Clark, 48 Md., 494; 18 Am. and Eng. Enc. of Law, new ed., 888, 889, 890; Snell v. Snow, 54 Mass., 281; Bloss v. Tobey, 2 Pick., 320; Carter v. Andrews, 16 Pick., 1.

The Court of Civil Appeals erred in overruling the fortieth assignment of error, which is substantially as follows: "The court erred in refusing to charge, at the request of the defendants, in effect that that paragraph in the challenge which states that certain things have rendered the plaintiff utterly unworthy of membership in the convention, is not libelous per se, and that they were further instructed that for the publication of that paragraph they could not find a verdict against the defendants for anything, unless they should further find that the statement therein contained was false, and that the effect of its publication was to bring the plaintiff into disrepute among the people of his denomination, and was published for that purpose."

Such conduct was not libelous per se, in this: That the challenge itself recites that at a previous session of the Baptist General Convention, held at Houston in 1896, the convention had defined what constituted dishonorable conduct in the members; that the plaintiff himself had acquiesced in that definition, made no protest against it, and if

they believed from the evidence that by the said statement in the challenge the defendants simply meant to apply the definition of dishonorable conduct which had been made at a previous session of the convention of which the plaintiff was a member, that the application of the language to him, under the circumstances, was not libelous per se, and that they therefore charged that for the publication of this paragraph, they could not find a verdict against the defendants for anything, unless they found that the statements therein contained were false, and that the effect of their publication was to bring the plaintiff into disrepute among the people of his denomination, and that it was published for that purpose.

The conduct of the plaintiff having been so outrageous and unbearable, and he having rendered the action taken by the convention against him necessary for its own protection, no verdict for damages in his favor should be permitted to stand. New on Libel and Slan., secs. 120-123, and notes thereto.

The occasion on which the publication was made having been privileged, and the proof showing and the facts indicating that it was the duty of some one to deny him a seat in the convention, and there being no evidence that any of the defendants were actuated by malice, except the mere fact that some of them entertained ill will against him, the defendants were entitled to a verdict as a matter of law.

It is not enough to show that a party charged with the discharge of a public duty has ill will against the person against whom he is called to act; but it must be proven, in addition thereto, that this ill will was the cause of his action.

*Crawford & Crawford, D. A. Holman, E. B. Muse* and *Jos. E. Cockrell,* for defendant in error.—Any writing is per se libelous which reflects upon a man's character or imports something disgraceful to him, or which tends to diminish his reputation, or which is injurious to his social character, or which is calculated to induce an ill opinion of him, or to impute immorality; so also is any language that is calculated to injuriously affect him in his calling, business or profession.

A charge that language libelous per se was with malice published concerning a plaintiff upon any occasion not absolutely privileged is good as against a general demurrer, whatever other defects the pleadings may have. Townes, secs. 176, 177; Odgers, p. 20; Bishop Non-Contract Law, secs. 278-283, and notes; Cranfill v. Hayden, 22 Texas Civ. App., 661; Houston Printing Co. v Moulden, 15 Texas Civ. App., 574; White v. Nicholls, 44 U. S., 266; Piper v. Woolman, 61 N. W., Rep., 588; 43 Neb., 280; Newell, Libel and Slander.

When a conspiracy has been prima facie established antecedent declarations of one of the conspirators are admissible against those who subsequently become parties to the conspiracy.

When prima facie evidence of a conspiracy has been presented, then declarations of those thus prima facie shown to be parties to such con-

spiracy are admissible in aid of the proof of the existence of the conspiracy.

A conspiracy may be, and in fact generally is, established by circumstantial evidence.

There having been already introduced much direct and circumstantial evidence of a conspiracy to attack and libel the appellee, to eliminate him and his influence from the Baptist General Convention, and to "crush" him and destroy him as a factor in the religious denomination of which he was a member and a preacher, the court did not err in admitting in evidence the declarations of said Maxwell showing the common purpose of himself and many others including the appellants to accomplish said conspiracy. Cranfill v. Hayden, 55 S. W. Rep., 805, 22 Texas Civ. App., 661; Stevens v. State, 59 S. W. Rep., 545, 42 Texas Crim. Rep., 154; Harris v. State, 20 S. W. Rep., 916, 31 Texas Crim. Rep., 411; Brown v. Chenoworth, 51 Texas, 476; Smith v. State, 21 Texas Crim. App., 107.

Where prima facie conspiracy proved declarations made in absence of defendant admissible as evidence of the existence of the common design and relation of the parties to the conspiracy. Blain v. State, 33 Texas Crim. Rep., 236; Mason v. State, 31 Texas Crim. Rep., 306; Brander on Ev., p. 514, and p. 516 subdiv. (b); Underhill on Ev., pp. 94, 95, 96, and especially the references to the Anarchist cases, Spies v. People, 122 Ill., 1.

The facts as to Maxwell and his declaration complained of in this assignment of appellants having been abundantly proved by other evidence establishing the same conclusion, appellants were not prejudiced by the evidence under consideration, even if erroneous. Appellants having permitted much other evidence similar to that complained of in the assignment to be admitted without objection, can not complain of this particular evidence as prejudicial. Cranfill v. Hayden, 55 S. W. Rep., 805, 22 Texas Civ. App., 661, holds expressly that there was evidence of a conspiracy. Cooley on Torts, pp. 124, 125, 126, and notes.

The court did not commit error in admitting the evidence complained of, because: (1) All the acts and conduct of the appellants in any way connected with the "challenge" were admissible as circumstances tending to show their participation in the concocting and publishing of said libel, and were a part of the res gestae. (2) Said evidence was relevant and material and tended to show that appellants were carrying out and effecting the purpose of their conspiracy to unseat appellee, as a means to crush him and destroy his reputation as a man, a minister and editor of a denominational paper. (3) In connection with the proof of the custom to publish in the minutes of the convention and the Standard all papers, resolutions and motions adopted by the convention, the votes of appellants to adopt said challenge was evidence of their design to publish and of their participation in the publications. (4) The objections urged that the evidence was irrelevant and immaterial point out no error. (5) The opinion of this court on the former ap-

peal was equivalent to a holding that the evidence was admissible.  Cotulla v. Kerr, 74 Texas, 91-94; Belo v. Fuller, 84 Texas, 453; Burton v. O'Neill, 6 Texas Civ. App:, 616; Nettles v. Somervell, 6 Texas Civ. App., 632-633.

The court correctly instructed the jury that although the libel in question was published on an occasion making it conditionally privileged, if published in good faith and without malice, yet if the appellants in publishing it were actuated in whole or in part by malice, the privilege of the occasion was destroyed by reason of the motives that actuated them.  Newell on Libel and Slander; Odgers; White v. Nicholls, 44 U. S., 266.

To define express malice as used in the law of libel as a design or motive to injure the person libeled, as contended for by appellants, is too narrow, since any improper motive, or want of good faith, excessively defamatory language, reckless or wanton disregard of the rights of the person defamed, proof of a desire to gratify the bad motives of another, and many other circumstances may be evidences of malice; and therefore the court did not err in refusing to charge on the weight of the evidence by telling the jury in effect that malice could only be proved by showing a desire "to injure."  Odgers, p. 270, and notes.

The court, having properly charged the jury that if appellants were prompted or actuated in whole or in part by malice, correctly refrained from requiring them "to go into the domain of metaphysics, to ascertain whether or not" the malice by which they were so actuated "was the controlling influence that prompted the publication."

"Express malice alone can overcome a plea of qualified privilege," and it does so "where the ill-will constituting such express malice" in whole or in part "influences actively," or "impels," or "instigates," or "furnishes the motive" for the publication.  Krug v. Pitass, 162 N. Y., 154, cited by appellants, and see also Conroy v. Pittsburgh Times, 139 Pa., 334.  There must be a proper occasion, a proper motive, proper manner of publication, and probable cause.  Wright v. Wright, 30 Ill. App., 349; Marks v. Baker, 28 Minn., 162.

If two or more persons enter into a conspiracy for the purpose of destroying the reputation, standing and influence of another, and to ruin him in his business, calling or profession, and if any one of the parties to such conspiracy, in attempting to accomplish the purpose for which such conspiracy was formed, publishes a libel, then all the parties to such conspiracy are responsible for such publication whether they personally participated therein or even had any knowledge as to the existence or contents of the libel, or not.  Cranfill v. Hayden, 22 Texas Civ. App., 661; Cooley on Torts, pp. 142, 145, 153.

When a defamatory writing is composed and subsequently printed and published, such publication alone is prima facie evidence, that is, some evidence, that the authors of the libel are parties to such publication, and unless authors explain that the possession of the libel passed from them without their consent, proof of such subsequent publication

is sufficient evidence to support a verdict against all who were parties to the manufacture of the libel.

Independently of the issue of conspiracy, there is evidence that all the appellants were publishers of the libel in the Standard; Cranfill as editor and publisher; Hanks and Mays as original writer and signer; Kimbrough, Millican, Hatcher, Burkett, Lee and Baines as signers and indorsers of it and as recommending it for publication, and Carroll, Gambrell, Baten, Jenkins, Walne, Riddle, as being present in one or more of the caucuses where the opinion was practically unanimous that the challenge should be presented by Mays and sustained, all fifteen of them thus making themselves parties to the concocting and publishing of the libel.

The burden of proof on the plea of justification was on appellants, and the court did not err in so instructing the jury, the plea of privilege in no manner changing the universal rule that the burden of proving the truth of a libel is on defendant.    Cranfill v. Hayden, 22 Texas Civ. App., 661; Odgers, Libel and Slander, p. 274; Townes, secs. 355-357; Newell, p. 651, 2; Beebe v. Railway Co., 71 Texas, 424; White v. Nicholls, 44 U. S., 266; Coles v. Thompson, 7 Texas Civ. App., 668-9; Klinck v. Colby, 46 N. Y., 427; Hamilton v. Eno, 81 N. Y., 116; Etchison v. Pergerson, 15 S. E. Rep., 680, 88 Geo., 620; Conroy v. Pittsburgh Times, 139 Pa., 334; McIntyre v. Bransford, 17 S. W. Rep., 359; Russell v. Anthony, 21 Kan., 329; Fulkerson v. George, 3 Abb. Pr., 75; Bishop Non-Contract Law, 306, 311.

Appellants, having introduced in evidence the publication of the appellee with reference to the East Fork incident and the "Yarrell statement," for the purpose of establishing the truth of their charge contained in the challenge to the effect that appellee had made war on the "work and workers" of the convention, and the "character" of said Secretary (Cranfill), and that he had "assailed the public and private character" of the superintendent of missions, the court correctly admitted evidence tending to show the truth of the alleged libels.

The appellants, having first introduced evidence with respect to the matter of collections for "associational missions," they can not rightfully complain that appellee was permitted to rebut and reply to such evidence.

In so far as the Yarrell statement is referred to in the document entitled "My Reply," it was admissible evidence as res gestae of what was said and done in the convention and before the committee, and was a proper circumstance bearing on the good faith of appellants in claiming to believe the truth of the challenge, and yet refusing to hear the evidence appellee proposed to offer showing its falsity.

The justification of a libel must be as to the effect, substance and imputations of the publication, and not to its literal truth; for example, a publication concerning A., that he had been arrested on a charge of horse-theft and confined in jail, can not be justified by literal proof that a formal charge of horse-theft had been duly filed against him,

that he had been arrested and in fact confined in jail; but the publisher must go further and show that A. was in fact guilty of horse-theft. So here to justify the charge that appellee was guilty of "dishonorable conduct" in assailing Cranfill's accounts as incorrect, on the ground that the "accounts had been audited and found correct," it is not enough to show that they had been audited and "found correct," but they must in fact be correct in order to preclude the right of appellee as an honorable man and editor of a denominational paper to point out to the denomination interested in the accounts, errors, omissions and inaccuracies.

It was not the province of appellants to define as "dishonorable conduct" a certain course of action which in fact was honorable, meritorious and praiseworthy, and then with impunity denounce anyone as "guilty of dishonorable conduct" who came within the terms of their arbitrary definition, and it is immaterial whether such person acquiesced in their "definition" or not. For example (and by analogy), a corrupt, political, office-holding ring are in the majority in a public meeting and pass self-commendatory resolutions concerning themselves, their "plans and policies, work and workers" and declare that any one in the meeting who shall not abide by the resolutions is a villain and a thief; an editor of a newspaper is present, but, being in the minority, neither votes nor speaks, because he does not want to do a vain thing. Now, appellants say that if such editor denounces the corruption of this ring he is in fact a "villain and a thief," and the majority crowd may with impunity so publish him; and it would be no palliation for the editor offending that even subsequently to the adoption of the resolutions he discovers new and gross frauds and corruption. Democrat Pub. Co. v. Jones, 83 Texas, 307; Dement v. Houston Printing Co., 14 Texas Civ. App., 392; and authorities cited; Odgers, sec. 169.

GAINES, CHIEF JUSTICE.—The Court of Civil Appeals have made a clear and accurate statement of the outlines of this case, which we adopt. It is as follows:

"This suit was brought by S. A. Hayden against J. B. Cranfill, J. M. Carroll, J. B. Gambrell, W. H. Jenkins, R. T. Hanks, L. M. Mays, G. W. Baines, T. J Walne, A. E. Baten, Bennet Hatcher, J. C. Burkett, R. A. Lee, I. B. Kimbrough, L. R. Millican, J. B. Riddle and others to recover damages on account of the publication of an alleged libel. A jury trial resulted in a verdict and judgment in favor of the plaintiff against the defendants named for $10,000 actual damages and $5000 exemplary damages. There was no recovery against the other defendants.

"At the time of the publication complained of and for many years prior thereto the plaintiff was a Baptist minister and editor and proprietor of the Texas Baptist and Herald, one of the leading papers of that denomination. The defendant Cranfill was also a Baptist min-

ister and was editor and proprietor of the Baptist Standard, another of the leading papers of the church. The other defendants were prominent members of the Baptist Church, several of them being preachers of the gospel. Many of the local churches of the State, including those to which the plaintiff and defendants belonged, had created a state organization known as the Baptist General Convention. This organization had been duly incorporated and it was declared in the constitution of the body that 'the object of this convention shall be missionary and educational, the promotion of harmony of feeling and concert of action among Baptists, and a system of operative measures for the promotion of the interests of the Redeemer's kingdom.' In furtherance of this object a board of missions was established. About 1894 a controversy arose concerning the work and the officers of the board. The plaintiff complained in his paper and otherwise of some matters connected with the business of the board. Some of the defendants were officers of the board and they and their friends resented the criticisms of the plaintiff. The controversy was carried into the general convention and resulted in the formation of hostile factions, the plaintiff and others heading one faction and the defendants and others leading the opposing faction. In 1897 the annual meeting of the general convention was held at San Antonio. The plaintiff had been elected as a messenger to the convention by certain constituent bodies. The defendants had also been chosen as messengers to the convention and were opposed to the admission of the plaintiff. The defendant Hanks prepared a written challenge to the right of the plaintiff to a seat in the convention and the defendant Mays signed the same and presented it to the convention. The challenge was based on the ground that the plaintiff was unworthy of admission because of personal unfitness. The challenge was sustained by the convention and the plaintiff excluded from participation in its deliberations. The challenge was published in the minutes of the convention and in the defendant Cranfill's paper. The plaintiff thereupon brought this suit, alleging that the statements contained in the challenge were false and libelous, that the same were made and published maliciously in furtherance of a conspiracy to injure and destroy the reputation and influence of the plaintiff as a man, as a minister of the gospel, and as publisher of a denominational paper. The defendants pleaded the general issue, justified the publication on the ground that the statements made therein were true, and asserted the privilege of the occasion, claiming to have acted in good faith and from a sense of duty in making the publication."

The Court of Civil Appeals affirmed the judgment of the trial court and we have granted the appellants a writ of error. The application for the writ of error contains forty-nine specifications of error; but we must content ourselves with a discussion of the leading questions, presented by them. The alleged libelous matter was contained in "the challenge" mentioned in the foregoing statement. This writing was set out in full in the petition, and it reads as follows:

"A Challenge to the Right of S. A. Hayden to a Seat in the Convention.—The undersigned, recognizing that this convention is the sole and rightful judge of its own membership and disclaiming any right or desire to interfere with the church relations of S. A. Hayden, and yet claiming that this convention has the right to be judge of its own membership, do now and here enter our formal challenge to S. A. Hayden before being allowed membership in this body and for the following reasons:

"First. He has violated the spirit and letter of the constitution of this body, which says: 'The object of this convention shall be missionary and educational, the promotion of harmony of feeling and concert of action among Baptists, and a system of operative measures for the promotion of the interests of the Redeemer's kingdom.' This fundamental law he has violated by a ceaseless and hurtful war upon the plans, policies, work and workers of this convention, thus misusing his privilege as a member, and instead of harmony, producing discord, contention, strife and animosities, which has resulted in serious and permanent injury to the work undertaken by the convention, and which has rendered him utterly unworthy of membership in this convention.

"Second. He is and has been in open and notorious opposition to the convention and its mandates.

"First (a). A strong resolution of censure and condemnation of his course in attacking the board of directors of the convention was passed at Houston, and the mandate was 'that he desist from such attacks in the future.' This mandate he has held in utter contempt and refused to obey. He has violated it by open and notorious attacks upon the superintendent of missions of this body, upon its board of directors, and upon the plans of work adopted by this convention.

"Second (b). Because of his ceaseless attacks upon the previous secretary of this convention for the years 1891 and 1892, whose report had been audited by the board, and further passed upon by the convention and found correct, and was again passed upon by this body at Marshall and found correct. Because he still attacked the integrity of said report, this body did again at Houston review said report and found it correct and did by resolution state that 'further agitation of this matter would show a distrust and an evil motive, which would be dishonorable in the agitator.' Against this action he did not speak or vote at the time. He has, since said convention, viciously attacked said convention and the character of said secretary and the action of this body thereon, and has by so doing convicted himself of dishonorable conduct.

"Third. Because he will not abide by and support the findings and decisions of this convention, its plans and policies for organized and operative work and has announced that he will not in future abide by its decisions unless they be settled his way.

"Fourth. He is unworthy of a seat in this convention on moral grounds. He has assailed the public and private character of the superintendent of missions and the board of directors by falsely accusing them

of dishonorable practices in the use of mission money. He has falsely accused them of conspiracy among themselves, and with other brethren and churches, city councils and others, to thwart the will of the Baptists of Texas. He is a breeder of strife and contention among the brethren and associates.

"Fifth. That said course of conduct has been pursued by him to such a length of time and with such continuous and persistent malice and traduction toward the convention, its officers, boards and ,objects, and in spite of repeated admonitions and mandates of this convention, as to convict said Hayden as being an incorrigible foe to the whole organization and work of the convention and to render his connection with it a standing menace to the life of the whole body, and to the cause of religion, morality and education as represented by it. We therefore challenge his right to membership in the convention, and ask that the convention refuse him a seat as one of its members.

(Signed)     "L. M. MAYS,
"Messenger from Austin Association."

"Report of Committee on Case of S. A. Hayden.—It is the sense of this committee that the complaints and challenge against S. A. Hayden are well founded, and we recommend that he be not allowed a seat in this convention. Geo. W. Baines, chairman; J. C. Gentry, J. C. Burkett, R. A. Lee, I. B. Kimbrough, L. R. Millican, Bennett Hatcher."

In the trial court a general demurrer was interposed to the petition and was overruled. This ruling was assigned as error in the Court of Civil Appeals, but the assignment was not sustained. The action of the court upon the demurrer is not specified as a ground of error in this court, but the same question is raised by assignments to certain parts of the charge of the court in which the jury were instructed, in effect, that certain language found in four different paragraphs of the challenge was libelous, if not justified. The words so charged to be libelous were: "has rendered him utterly unworthy of membership in this convention;" "has by so doing convicted himself of dishonorable conduct;" "is unworthy of a seat in this convention on moral grounds;" and "as to convict said Hayden as being an incorrigible foe to the whole organization and work of the convention and to render his connection with it a standing menace to the life of the whole body, and to the cause of religion, morality and education as represented by it."

The alleged libelous matter was contained in one writing—"the challenge"—which was pleaded as a whole and was set out in full in the petition. Since the instrument was one writing and had to be construed as such this was a proper manner of pleading it, and if any part of it was libelous and if the plaintiff proved that it was maliciously published by the defendants, he made out his case. Therefore it seems to us that if in the opinion of the learned trial judge any part of the writing was libelous he should have charged merely that the whole was libelous; and that it was unnecessary that he should have pointed out in his instruc-

tions the particular language upon which he based his opinion. So we think that if any of the language of "the challenge" was defamatory in its character, it could not have prejudiced the defendants even if some part of it, which was declared by the court in its charge to be libelous, was not such in fact. If a part of the publication was libelous the questions for the jury were, did the defendants publish the writing or take part in causing it to be published, and if so, were they actuated by malice in so doing?

In Gathercole v. Miall, 15 M. & W., 321, Baron Parke instructed the jury: "That a libel is anything written or printed, which from its terms is calculated to injure the character of another, by bringing him into hatred, contempt or ridicule, and which is published without lawful justification or excuse." This definition, though not full, is, as applied to the facts of this case, as accurate a statement of the law as can be made. The same idea is conveyed by Lord Holt in Cropp v. Tilney, 3 Salk., 226: "Scandalous matter is not necessary to make a libel; it is enough if the defendant induces an ill opinion to be had of the plaintiff or to make him contemptible and ridiculous." According to these definitions some of the language declared by the court in its charge to be libelous was, when disconnected from its context, clearly so, if not all. We do not understand that plaintiffs in error controvert this proposition. As we construe their propositions in this court, they do, however, assert, that, when properly construed in the connection in which they were used, the challenge does not allege as a fact the charges contained in the words which would of themselves have been libelous, but merely give them as conclusions from the facts previously stated. Now it may be, to say of a plaintiff by words spoken that he has done certain acts, and that the speaker's conclusion therefrom is that he is guilty of a crime, would not maintain an action where the facts stated would not sustain the charge. For example, to say orally of the plaintiff that he, honestly claiming to own personal property, had taken it without the consent of the owner and that for that reason he was a thief, or to impute to him theft of property of which larceny could not be committed, would not be actionable. Whether the same rule applies to written words may not be so clear. It certainly would not provided the facts stated imputed dishonest, dishonorable or immoral conduct, although they did not constitute a crime. But in our opinion the words specified by the trial judge in his instructions as libelous, when viewed in connection with all the other allegations in the writing, can not be held to be mere conclusions of the writer deduced from facts alleged which are not in themselves defamatory. This is very clearly the case with reference to the allegations in the fourth paragraph of the challenge: "He has rendered himself unworthy of a seat in this convention on moral grounds. He has assailed the public and private character of the superintendent of missions and the board of directors by falsely accusing them of dishonorable practices in the use of mission money. He has falsely accused them of conspiracy among themselves, and with other brethren and churches, city councils

and others to thwart the will of the Baptists of Texas. He is a breeder of strife and contention among the brethren and associates." The matters of fact stated in that paragraph were amply sufficient to sustain the conclusion primarily announced, and if false and published maliciously were themselves libelous. So in the fifth paragraph, the words which imply that the plaintiff had long and persistently opposed the convention and its officers by maliciously traducing them are more clearly libelous than the conclusion that he was the incorrigible foe of the whole organization, etc.

Now as to the language of the first paragraph of "the challenge." The mere assertion that the plaintiff had made "war upon the plans, policies, work and workers of the convention and has produced discord rather than harmony," may be quite void of an actionable quality. But when connected with the assertion in the fourth paragraph to the effect that in the course of his strife he had been guilty of false accusation of the superintendent of missions and the board of directors, and the further assertion in the fifth, that he had maliciously calumniated its officers and objects, it becomes quite clear that the language that his conduct "had rendered him unworthy of membership in the convention" was used in no mild or innocent sense. It is plain from the vigorous expletives employed throughout that it was not meant merely to assert that his mere opposition to the work of the convention rendered him unworthy of membership in it.

So as to the subdivision of the second paragraph of the challenge. To say of one that he had viciously attacked the convention and its secretary on the score of his reports, which had been repeatedly approved by the convention, is to justify the conclusion that he "has convicted himself of dishonorable conduct."

The petition alleges and the undisputed evidence shows that the plaintiff was a minister of the gospel and a publisher of a religious paper. Therefore we think that if there were any doubt as to the language quoted being libelous when applied to one whose avocations in life were not affected injuriously thereby, there could be none when applied to one pursuing the avocations which the plaintiff was following at the time the publications were made.

The trial judge in his charge instructed the jury that the publications were privileged, and that the plaintiff could not recover unless they were also malicious; but in three separate paragraphs of his instructions the jury were further charged, in effect, that if any defendant who took part in the publication was actuated by malice "either in whole or in part" in so doing his privilege would not protect him. These charges are assigned as error upon the ground, as we understand, that unless malice was the controlling motive which prompted the publication, the defendants were in no event liable.

The court ruled that the publications in question were conditionally privileged; and in determining the correctness of the instructions now

under consideration, it is well to define the limitations of that doctrine. If a defamatory publication is absolutely privileged, the occasion justifies the language and no action arises. If the defamatory words are published on an occasion not privileged, and are not justified, malice is implied, for the reason that every act intentionally done to the damage of another, without legal justification or excuse, is in the eye of the law malicious. But a defamatory publication which is conditionally privileged occupies a middle ground; that is to say, the publication is privileged provided it was actuated by a sense of duty growing out of the occasion, and provided it was not malicious. When the court finds that the publication is conditionally privileged, the effect of the holding is to cast upon the plaintiff the burden of proving that malice prompted the act—not merely malice which arises by implication of law, but malice in fact, otherwise denominated actual malice. In other words, if the publication be conditionally privileged, malice is not implied from the mere fact of the publication. But the question recurs, where it appears from the evidence that both a sense of duty and a desire to injure the plaintiff have conspired to incite the act, is the publication malicious and actionable? Clearly where the defendant acts from a desire to do his duty to his neighbor, to an association of which he is a member or to the public at large, and without a desire to injure the plaintiff, he is protected if the occasion be such as to justify his action. But he can not with impunity use the occasion as a cloak to vent his spleen and to injure the reputation of another; and we think, that if in making the publication he have an unlawful purpose, the fact that he may also have been actuated in part by a lawful motive can not justify his act. If he acts upon the combined motives one of which is malicious, his act is malicious as a whole. It seems to us to be somewhat analogous to the case of fraud. A transaction may be entirely legal and fair in all respects, save in one particular only, and fraudulent in that one; but being fraudulent in part it is fraudulent as a whole. We have been cited to no case, and we doubt if any case be found, which holds that in order to make a publication conditionally privileged libelous, the preponderating or controlling motive must have been malicious. Such a rule does not in our opinion accord with the principles applied in analogous cases. For example, let us take the case of an action for wrongfully and maliciously suing out an attachment. If the facts alleged in the affidavit are not true, the plaintiff is entitled to recover his actual damages for procuring the issue of the writ; but if the attachment be maliciously issued, he may also recover exemplary damages. In these cases the malice usually consists in knowingly making use of the forms of the law to procure an advantage over the defendant in the writ to which the plaintiff therein is not entitled. But it may consist in a desire to injure him; as for example to impair his credit and to embarrass his business. Now in such a case it is most probable that the principal, the controlling motive, is to collect the debt, and but for the desire to secure his claim the plaintiff would not have procured the issue of the writ. In such a case can it be doubted

that the defendant in the attachment would be entitled to recover of the plaintiff who sued out the writ exemplary damages for the malice which entered into the transaction?

The law deals tenderly with a party whose right or duty it is to speak as to the character of another, and allows him to make statements damaging to the reputation of such other, provided he act in good faith in so doing. If he makes the publication solely from a sense of duty he is justified, although the imputations may be false. But if actuated in making the publication in part by a desire to bring an adversary into disrepute, should the conditionally privileged occasion protect him? He does no wrong by publishing the truth, however defamatory it may be. If his purpose is not only to perform a duty but also to disparage the character of the person assailed, it seems to us it is no hardship upon him to require him to know what he is about to publish is true, before he makes the publication.

The authority mainly relied upon to sustain the position of plaintiffs in error upon this question is the case of Howard v. Thompson, 21 Wend., 319. In that case the plaintiff, Howard, was an officer in the United States custom-house on Staten Island. The grounds of the action were letters written by the defendant to the Secretary of the Treasury charging plaintiff with peculation and fraud in the management of the public business. The action was for a libel and the publications were held to be conditionally privileged. But the letters being a complaint against an officer to the head of his department, who had the power to remove him from office, the court distinguished the case from that "of a written communication between private persons, concerning their own affairs, 'and from one' addressed to a man or set of men chosen by a voluntary society, a bishop or presbytery for example, and having, by common consent among the members, a power to redress grievances," and held that the suit should be assimilated to an action of malicious prosecution. The judge there charged the jury "that there was no proof to warrant the conclusion that the defendant had probable cause for making the charge imputed to him," and under the facts of the case this was held to be error. This seems to us to have been the principal if not the only point determined in that case.

But while we incline to think the charges in question technically correct, we are of opinion that the propositions as applicable to the facts of this case should have been stated in a different form. We think a more appropriate instruction would have been, that if the jury should find that the defendants who took part in the publications were actuated solely by a sense of duty to the convention the publications were not actionable, but if they should believe that such defendants were impelled not only by such sense of duty but also by a desire to injure the character of the plaintiff, they should find a verdict in his favor against them.

In our opinion also the frequent repetition of the words "in whole or in part" should have been avoided.

We also think that in this connection the jury should have been in-

structed, in effect, that while they should consider the evidence as to any ill will on part of any defendant towards plaintiffs in determining the question of malice, yet if it was not shown that such ill will had some influence in causing the publication, they should find a verdict for such defendant. We think that such instruction was called for by the fact that there was testimony in the case tending to show, on part of some of the defendants at least, strong animosity against the plaintiff.

Error is also assigned upon the following instruction contained in the charge of the court: "As to all the issues in this case, except the issue of the truth of said libels, the burden is on the plaintiff to make out his case by a preponderance of the testimony; but as to the issue of the truth of said libels, the burden is on the defendants to show by a preponderance of the testimony that said libels were true." The proposition in support of the assignment is that since the publication was privileged the burden of proof was upon the plaintiff to prove the falsity of the charges contained therein. We do not regard the proposition as sound.

Everyone has right to speak or publish the truth, however injurious to the character of another the language may be. But in case of defamatory language published upon an occasion not privileged the rule is, that if the defendant relies upon the truth of the matter so uttered or published as a defense he must plead and prove that the charges were true; so that when the plaintiff has proved that the defendant published the defamatory language, he has made a prima facie case. In such a case the law implies malice. But if the language be uttered upon an occasion which would justify the statement, though false in fact, provided it was made in good faith and from the motive which the occasion warrants, the plaintiff, as we have previously said, must go one step farther and must prove actual malice—that is to say, that there was an improper motive "which had some influence in causing" the words to be spoken or the publication to be made. This seems to us to be the principal difference between the case of a defamatory publication which is conditionally privileged and of one which is not privileged. There may be some other differences with respect to the introduction of testimony; for example, according to some of the authorities, the defendant although he has not pleaded the truth of the charges may introduce testimony to show the statements were true or that he had probable cause for making them in order to rebut evidence introduced by the plaintiff which tends to show malice. But these differences do not concern us here. The effect of establishing malice is to destroy the privilege; and when the privilege is out of the way it seems to us the remaining issues are precisely the same as if the occasion was not privileged. Where the alleged libel is conditionally privileged, the defendant may justify either by showing the privilege or by pleading and proving that the statements are true. But malice being proved and the privilege thereby removed, he must fall back upon his justification by proof of the truth of the

charges; and we see no good reason why the ordinary rule applied in other cases upon that issue should not be applicable to him.

In our opinion the rule rests upon the theory of the presumption of innocence. Even in civil matters, as illustrated by a variety of cases, this presumption obtains. Therefore where one is sued for the publication of defamatory matter, and would justify on the ground that the charges are true, he must counteract by evidence "the constant pressure" of the presumption of the plaintiff's innocence and must overthrow it. In other words, he takes upon himself the burden of showing that the damaging facts alleged by him concerning the plaintiff are true.

The industrious research of counsel for the plaintiffs in error have cited us to many cases in which expressions in the opinions of the courts apparently sustain their position. For example, in the case of Briggs v. Garrett, 111 Pa. St., 415, the court is quoted as saying: "The plaintiff must show it [meaning the libelous statement] to be untrue." There the plaintiff was the judge of a court and the defamatory statement as to him was solely in reference to an instruction which he was alleged to have given to the jury upon the trial of another cause. Upon the trial of the libel suit it was shown that the plaintiff was not the judge who tried the case, and the fact was not disputed. Therefore the question of the burden of proof as to the falsity of the charge did not arise in that case. The same remarks apply to the other cases cited upon this question, with the exception of two, which we will briefly notice. In Edwards v. Chandler, 14 Mich., 471, the question was not directly presented but may have been incidentally involved. In that case the alleged libelous publication was privileged, and the defendant had pleaded only the general issue, and upon the trial sought to introduce evidence to show the truth of the statements made in the publication. The testimony was rejected and upon the appeal the court held that this was error; and in support of their ruling say, in effect, that the defendant had a right under his plea of the general issue to disprove anything the plaintiff was called upon to prove in order to make out his case, and that since he had to prove the falsity of the statements, the defendant was entitled to prove their truth. No statement of the case accompanies the opinion and that contained in the opinion is meager. It may be, that, in order to prove malice, the plaintiff had introduced evidence tending to show the falsity of the charges and that the defendant knew them to be false; if so it was certainly competent for the defendant to adduce testimony to show that they were true. Such was the point made in the brief of the plaintiff in error in that case. But if it was intended to hold, that, in case a defamatory statement is conditionally privileged, the plaintiff must not only show malice, but also that the statement is false, we can not concur in the ruling. The case of McIntyre v. Bean, 13 U. C. Q. B., 540, has not been examined by us, the volume not being accessible. There are cases cited from the Supreme Court of Pennsylvania which seem to apply to cases of libel conditionally privileged, in a measure at least, the rules which obtain in actions for malicious prosecu-

tion.   Chapman v. Calder, 14 Pa. St., 369.   The case cited by that court in support of the doctrine is Howard v. Thompson, 21 Wend., 319, to which we have previously referred.   But in that case the rule was applied, as we have already seen, only to the case of a defamatory statement made to a public officer against another officer, subject to be removed by him.   Public policy demands that protection should be thrown around those who institute prosecutions for offenses against the law; and hence a defendant in a case of a malicious prosecution can not be held liable unless it be shown that he acted maliciously and without probable cause.   The public has an interest in the removal from office of those who act oppressively or corruptly, and hence there is a reason why a like protection should be afforded to one who complains to his superior officer for the purpose of securing his removal.   But we understand the court, in Howard v. Thompson, to except from the rule announced by it ordinary cases of conditionally privileged defamatory publications.

The latest case, and the one most nearly in point on this question, which we have been able to find is that of Atwater v. Morning News Company, 67 Conn., 504.   In that case the court say:   "If the claim of the defendant goes so far as to insist that where the defendant has shown circumstances that furnish an occasion for a privileged communication, that then in addition to the burden of proving actual malice and the want of that good faith essential to every such communication, the plaintiff must also assume the burden of proving the falsity of the defamatory charge, the claim is contrary to the settled law of libel.   The opinion of the court in Edwards v. Chandler, 14 Mich., 475, 476 (and in one or two of the cases cited by the defendant), seems to furnish excuse for this claim, but we can hardly think that such was the real intention of the learned judges who gave the opinions in those cases."

If the courts, in the cases which have been cited on behalf of the plaintiffs in error in support of their proposition as to the burden of proof, mean to say that in a case of a conditionally privileged publication where justification has been pleaded it must appear that the publication is false, before the plaintiff can recover, we think they are correct; for unless the defendant shows it to be true, it appears according to the legal rule that it is false.   But if they mean to say that in such a case, after malice has been proved, the burden of proof as to the falsity of the charges is shifted to the plaintiff, we can not concur.

"The challenge" which is the basis of this action was first published during the proceedings of the Baptist convention which assembled at San Antonio on the —— day of November, 1897.   One Maxwell was a member of that convention and was made a party defendant in the suit; but had died before the trial of the case and was therefore no longer a party thereto.   One Dr. Tanner was permitted to testify, over the objection of the defendants, that in the latter part of October, 1897, he had a conversation with Maxwell, who was on his way to the convention; that the witness asked Maxwell what they were going to do with Hayden;

"that he said they were going to keep him out of the convention;" that witness "asked how they could do it if he had proper credentials;" and that "he said if the credentials could not be questioned, the committee on credentials would hold up their report until near the close of the convention, when the business of the convention would be about over." The ground of the objection was that the testimony was irrelevant, immaterial and hearsay. Upon the first offer to introduce this testimony the court correctly, as we think, excluded it; but upon the coming in of the testimony of two witnesses—namely, Judge Harris and George Walton—it was admitted, presumably upon the ground that the facts stated by them proved or at least tended to prove such a conspiracy between Maxwell and at least some of the defendants as would render his declarations evidence against his coconspirators.

The substance of the testimony of these witnesses was that they were present at a meeting held by some members of the party in the convention who were opposed to the plaintiff; that in that meeting the question of excluding him from the body was discussed; that it appeared that there had been a meeting the night before, in which a plan for excluding plaintiff had been agreed upon; that defendant Wooten, who was present, stated: "That L. M. Mays should challenge S. A. Hayden's right to a seat in the convention; that a steering committee was appointed; also that a committee on credentials was appointed, whose duty it was to make their report on the last day of the convention;" and that the plan was adopted by those present. According to Walton's testimony no one opposed it but Judge Harris. It also appears from other testimony that the plaintiff was subsequently excluded from the convention in strict accordance with the plan suggested at the meeting at which the witnesses Harris and Walton were present.

Now it may be that when one declares, that, upon a certain occasion, he with others are going to pursue a certain course of conduct towards another which is unusual upon like occasions, proof that, when the occasion arose, precisely that course was pursued, tends to show that there was a previous agreement to do what was done. For example, if in fact upon the meeting of the convention the defendant's right to a seat in the body was challenged, and the challenge referred to a committee on credentials with the understanding that it was to be held up until a time near the close of the convention, and was actually held up until such time, these facts tended to show that Maxwell spoke advisedly when he said they would keep him out of the convention by challenging his right to a seat and causing action to be delayed upon the challenge until "the business of the convention was about over." Therefore we think that if the exclusion of the plaintiff from a seat in the convention was an actionable wrong, and if the suit was merely for his exclusion, the evidence should have gone to the jury. But here the suit is for the publication of defamatory language which was contained in the challenge which was in fact made and sustained by the convention. If the declarant had gone further and stated that the challenge had been pre-

pared, or would be prepared, and that it would be based upon the charges contained in the challenges upon which the suit had been brought, it may be that his declarations would have tended to show a conspiracy already entered into for the purpose of defaming the plaintiff. But we find nothing in the declarations as to the character of the challenge which was to be preferred. Maxwell did not even use the word "challenge;" but we think it is to be implied that an objection to the seating of the plaintiff was to be filed with the committee. It seems to be conceded that the party in the convention opposed to the plaintiff had the right under the rules of the body to exclude him without charging him with moral turpitude, provided they could procure the requisite number of votes. In our opinion the declarations do not show that Maxwell had in mind any particular challenge, or a challenge based upon any particular charges. Here again the presumption of innocence must have effect, and it must in the absence of countervailing evidence be deemed that he meant a fair challenge and not the challenge which was subsequently prepared and published. We think the declarations of Dr. Maxwell should not have been admitted in evidence.

But it is insisted on behalf of defendant in error that the admission of the evidence did not prejudice the rights of the plaintiffs in error. The admission of improper evidence, unless it be calculated to affect injuriously the rights of the party against whom it is introduced, is not usually a ground for reversing a judgment. But we think, in order to hold it not reversible error, it should clearly appear that it could have done no injury; and when the record shows, as in this case, that the testimony had been once rejected, and had been offered a second time before its admission, it suggests that counsel thought that it would have some effect beneficial to their cause upon the minds of the jury. When we reflect that the case was made out upon the trial largely by circumstantial evidence and consider the great mass and almost endless detail of the testimony, we can not say that the jury did not consider this illegal evidence and that it had no effect upon their deliberations in reaching their verdict.

The plaintiffs in error also assign error upon the admission of testimony with reference to the conduct of defendant Cranfill in connection with the "East Fork collection." Their statement under the assignment is: "The court, over the objection of the defendants, permitted the plaintiff to offer the evidence of S. L. Yarrell and several other witnesses, tending to show that J. B. Cranfill, at the request of the associational authorities of the East Fork Association, in 189—, took up a collection for the East Fork Association, and tending to show that he took from the basket containing the collection $10 which belonged to the said East Fork Association. It was conceded and certainly proven that it was not Cranfill's duty, while he was corresponding secretary, to take up such collections; that he did so as a mere matter of accommodation to the East Fork Association, and that it had nothing to do with his duty as corresponding secretary. The admission of this testimony was ex-

cepted to, because it was immaterial and in nowise affected the truth or falsity of the matters set up in the challenge which constituted the only issue in the case." It is contended in support of the assignment, in short, that Dr. Cranfill in taking up the collection was acting at the request of the East Fork Association and in his private capacity and not as corresponding secretary of the convention, and that therefore the testimony was immaterial. In one part of their answer in justification of the charges in "the challenge" the defendants aver that one Yarrell had made a statement over his signature, which is set out in haec verba in the answer, and which contains the charge against defendant Cranfill to which the testimony objected to related. They also aver that the Yarrell statement was published by the plaintiff in his newspaper and that the charge contained therein was false and was known to plaintiff to be false. The falsity of the charges having thus been made an issue in the case, we are of the opinion that testimony which tended to prove its truth was properly admitted.

For the error of the court in admitting the testimony of Dr. Tanner as to the declarations of Maxwell, the judgment is reversed and the cause remanded.

*Reversed and remanded.*