## EXPRESS PUB. CO. v. LANCASTER.
### (No. 573–4392.)

(Commission of Appeals of Texas, Section B. June 16, 1926.)

**1. Courts ⚖══247(7).**

Denial by Court of Civil Appeals of recovery for libel by article qualifiedly privileged under Rev. St. 1911, arts. 5595–5598, on finding of gross negligence by publisher of article, is not in conflict with allowance of recovery for libel on same article on finding of actual malice.

**2. Appeal and error ⚖══1094(2)—Affirmance by Court of Civil Appeals of finding by trial court cannot be disturbed by Commission of Appeals, unless there is no evidence to support it (Rev. St. 1911, arts. 5595–5598).**

Affirmance by Court of Civil Appeals of finding by trial court of actual malice by defendant sued for libel under Rev. St. 1911, arts. 5595–5598, cannot be disturbed by Commission of Appeals, unless there is no evidence of actual malice.

**3. Libel and slander ⚖══51(1).**

Where recovery in action for libel is based on actual malice alone, question whether libelous article is qualifiedly privileged is unimportant.

**4. Libel and slander ⚖══48(2).**

Newspaper charging one with corruption must do so truthfully, or at least base its charge on state of facts deemed probable cause to justify such charge.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Fred H. Lancaster against the Express Publishing Company. Judgment for plaintiff was affirmed by the Court of Civil

Appeals (270 S. W. 229), and defendant brings error. Affirmed.

Denman, Franklin & McGown, Templeton, Brooks, Napier & Brown, F. C. Davis, and Chambers & Johnson, all of San Antonio, for plaintiff in error.

T. T. VanderHoeven, B. A. Greathouse, and Lewright & Lewright, all of San Antonio, for defendant in error.

POWELL, P. J. The opinion of the Court of Civil Appeals, written by Chief Justice Fly, fully states this case. See 270 S. W. 229. Briefly speaking, Lancaster recovered judgment in the district court for $15,000 as his damages arising from an alleged libelous article published in the San Antonio Express on December 23, 1917. That judgment was affirmed by the Court of Civil Appeals in its opinion aforesaid. The chief part of the article published read as follows:

"Two local officers must go, verdict of committee on vice. Action to be recommended to mayor in extensive report to be filed during the present week. Drastic arraignment of peace officers expected. After month of diligent investigation, committee finds that charges of corruption made by army officer are true —Threat of martial law if conditions are not remedied. The chief of police and the police judge of San Antonio must go.' "

All of aforesaid quotation, except the last sentence, was in glaring headlines. The statement that the committee report would find these two officers guilty of corruption in office did not materialize. In other words, the statements were false. And, as will be readily conceded, charges of this nature are of a very serious type, being adequate ground for removal from office, if true.

The writ of error in this case was granted "on apparent conflict alleged with Express Publishing Co. v. Wilkins (Tex. Civ. App.) 218 S. W. 618." Wilkins was the police judge attacked in this same article. Lancaster was the police chief. Wilkins had recovered a judgment in the district court. It was reversed and the cause remanded by the Court of Civil Appeals in an opinion by Chief Justice Fly. Did this learned judge render two decisions which are really in conflict? Before deciding this question, it may be well to quote the libel statutes then in force. They are as follows:

"Article 5595. *Definition.*—A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury.

"Art. 5596. *Mitigation of Damages.*—In any action for libel, the defendant may give in evidence, if specially pleaded, in mitigation of exemplary or punitive damages, the circumstances and intentions under which the libelous publication was made, and any public apology, correction or retraction made and published by him of the libel complained of. The truth of the statement or statements in such publication shall be a defense to such action.

"Art. 5597. *What Matters Deemed Privileged.*—The publication of the following matters by any newspaper or periodical, as defined in article 5595, shall be deemed privileged, and shall not be made the basis of any action for libel without proof of actual malice:

"1. A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of the same, when in the judgment of the court the ends of justice demand that the same should not be published, and the court so orders; or any other official proceedings authorized by law in the administration of the law.

"2. A fair, true and impartial account of all executive and legislative proceedings that are made a matter of record, including reports of legislative committees, and of any debate in the Legislature and in its committees.

"3. A fair, true and impartial account of public meetings, organized and conducted for public purposes only.

"4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information.

"Art. 5598. *To be Construed, How.*—Nothing in this chapter shall be construed to amend or repeal any penal law on the subject of libel." Rev. St. 1911.

In speaking of the first article just above quoted, our Supreme Court, in the case of Guisti v. Galveston Tribune, 105 Tex. 505, 150 S. W. 877, said:

"So that we are constrained to hold with Judge Key as in the case of Walker v. San Antonio Light Publishing Co., above cited [30 Tex. Civ. App. 165, 70 S. W. 555]' that the manifest purpose of the Legislature in enacting this law was to cover the entire subject of libel as applied to civil actions, without regard to the rules of the common law and holdings of the courts on the subject, and to materially enlarge the rights of those who may be the subject of libelous publications."

[1, 2] There is no conflict between this case and the Wilkins Case. In the latter case, Judge Fly held that this article was qualifiedly privileged, being a reasonable and fair comment or criticism of the official acts of Wilkins. In view of that holding, he said that recovery could be had only upon proof of actual malice. He further declared that this question was raised by the evidence, but he reversed the case because recovery, under the charge given by the trial court, was allowed, if the publisher "was guilty of gross negligence." Justice Fly held that there was a difference between gross negligence and actual malice. The Wilkins Case was remanded for another trial under a proper charge submitting the issue of actual malice. No writ of error was sued

out in that case. It does not here appear what finally became of the Wilkins claim. Counsel for Wilkins, also counsel for Lancaster, tried the latter case in the district court upon the theory that the article was qualifiedly privileged, in view of the opinion of Judge Fly in the former case, and they assumed the burden of showing actual malice in the Lancaster Case. That issue was submitted to the jury. Actual malice was found by the jurors. The district court sustained that fact finding. The court of Civil Appeals affirmed said findings of the trial court. Consequently, we cannot disturb it here, unless it can be said that there is no evidence in the record tending to establish actual malice. We have reviewed the record carefully, and cannot make such a statement. In addition to what Chief Justice Fly says upon this point, counsel for Lancaster, beginning on page 6 of their brief in the Court of Civil Appeals, set out the testimony which raises this issue.

[3] In view of the fact that there can be no contention that this recovery is improper, if actual malice appeared, we think it unnecessary to further discuss this case. There is no conflict between the Wilkins Case and this one, as we have heretofore stated. The latter was tried in view of the holding in the former. If any of the language in the Lancaster Case seems to conflict with that used in the Wilkins Case, it is absolutely immaterial. Where the recovery is based upon actual malice alone, the question of qualified privilege becomes unimportant.

As we read these records, counsel for Lancaster do not controvert the law as correctly stated by counsel for plaintiff in error, in their application, as follows:

"A publication to be libelous must contain a defamation of the libelee in some of the ways named in the libel statute. If not privileged, the defamation imports malice. If absolutely privileged the defamation furnishes no ground for a civil action for damages. If qualifiedly privileged in order to be made a ground for such action, it must be affirmatively shown by the libelee to have been made with actual malice toward him. Actual malice must be proven as a fact; it cannot be established by the defamation alone."

The application presents other assignments. We have carefully reviewed all of them, and think no reversible error is shown. We are of the view that the case was fairly tried, and that the judgments of the lower courts, not being without some support in the evidence, should be affirmed.

But we do not wish to be misunderstood in this case. We do not find it necessary to pass upon the action of the Court of Civil Appeals, in the Wilkins Case, in holding that this publication was qualifiedly privileged, and that no recovery could be had in the absence of actual malice. We entertain very grave doubts about the correctness of this holding. This publication was false. It charged misconduct so serious, if true, as to authorize removal from office. When that is the situation, it would seem, under all the decisions of our Supreme Court, that we are presented with a case of libel per se, and that actual damages may be recovered irrespective of actual malice. In this connection, we refer to the following cases: Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819; Nunn v. Webster (Tex. Com. App.) 260 S. W. 157; Belo & Co. v. Looney, 112 Tex. 160, 246 S. W. 777. We quote from this latter case as follows:

"We think the great weight of American authority is to the effect that false statements of fact concerning a public man, or the imputation to him of corrupt motives, is not privileged as fair comment. Possibly this doctrine was never better stated anywhere than by the Supreme Court of Maryland in the case of Negley v. Farrow, 60 Md. 158, 45 Am. Rep. 715, where the following expression is found:

" 'There is a broad distinction between fair and legitimate discussion in regard to the conduct of a public man and the imputation of corrupt motives by which that conduct may be supposed to be governed; and if one goes out of his way to asperse the character of a public man and to ascribe to him base and corrupt motives, he must do so at his peril, and must either prove the truth of what he says or answer in damages to the party injured.' "

It is true that the Looney Case, from which we have just quoted, was by a special Supreme Court. At least, Chief Justice Moursund and Associate Justice McCartney were special justices. Associate Justice Greenwood sat in the case with these gentlemen. However, the opinion is a very able one, and correctly states the law, in our judgment.

Since the case at bar charges corruption falsely, then we are not at all sure that this publication is qualifiedly privileged. We doubt if it can be said to be "fair and reasonable comment." We do not pass upon it, because, as already stated, it is not necessary for us to do so. But we do make this comment in order that it may not be hereafter said that we approved this holding in the Wilkins Case.

[4] We have no disposition in the world to bridle the press of the state. It is rendering a very valuable service to the people. In fact, we are heartily in favor of the freedom of the press. But, we do not wish to be unmindful of the corresponding importance to every man of maintaining his reputation for honesty and integrity. This reputation is dear to him. It is the most valuable asset of any man. It is in no sense less valuable simply because a man may hold a public office. When a newspaper charges a person with corruption, it must do so truthfully, or, at least, base its charge upon a state of facts which might be deemed probable cause to justify such a charge. There is a vast difference between mere inefficiency in office

and corruption therein. Of course, inefficiency may reach the point where it is the cause for removal, but not generally so. A man may be honorable and hold his head erect, although inefficient. But he cannot face his fellowmen in confidence when he is corrupt or when newspapers have given him that reputation. In singling out individuals and charging them with corruption in office, the press is dealing with a situation of most vital import to the person attacked. As we view it, it is just as serious as it would be to shoot him with a gun or stab him with a knife. Great caution should be exercised in doing so.

For the reasons heretofore stated, we recommend that the judgment of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.