**COOKSEY v. McGUIRE et al.**

No. 2069.

Court of Civil Appeals of Texas. Eastland.
Dec. 6, 1940.

Rehearing Denied Jan. 10, 1941.

McWhorter, Howard & Cobb, of Lubbock, for appellant.

Carl Rountree and J. E. Garland, both of Lamesa, for appellees.

LESLIE, Chief Justice.

Tom Cooksey instituted this suit against Gordon McGuire, Jimmie Stanfield, M. C. Lindsey, Bob Brown, W. W. Strong, Weldon Lindsey, J. C. Camp, John Strong, H. H. Barron, Jim Broughton, Pruitt Dubose, Mrs. Laura Horton, a feme sole, Mrs. Guy Simpson, a married woman, and her husband, Guy Simpson, to recover damages due to an alleged libel and slander perpetrated against the plaintiff by the defendants, jointly and severally.

The defendants answered separately by general demurrer, general denial, and that the matters communicated were qualifiedly or conditionally privileged and spoken if at all without malice toward the plaintiff.

Preliminary to the commencement of the trial and on motion of the plaintiff, the cause of action was dismissed with prejudice as to Weldon Lindsey, J. C. Camp, John Strong, Jim Broughton and Pruitt Dubose. The trial then proceeded before the court and jury, and at the conclusion of the plaintiff's testimony the trial court instructed a verdict in favor of each of the remaining defendants. The plaintiff appeals.

The alleged libel and slander charged by appellant, Cooksey, against the appellees consisted in the publication by the latter of a check accompanied by statements to the effect that the appellant had not paid the same and did not pay his honest debt, etc. The check is to the tenor following:

"Lamesa, Texas, 2/10/1924
"The First State Bank
Of Lamesa
"Pay to the order of Mr. M. M. Horton
.....$600 Six Hundred and ......Dollars
"For work for one year 1923.
"Tom Cooksey
"Tax Coll"

It is first alleged that the appellees "acting together with each other" displayed said check to named persons, stating with reference thereto that the appellant had executed and delivered it and had not paid it. That in so doing he refused to pay his honest debt and by so acting had rendered himself unfit to be nominated for and elected to the office of Sheriff of Dawson County, or to hold any such official position. It is also alleged that the appellees acting separately and individually defamed the appellant in the manner indicated on various and sundry occasions in Dawson County. That whether acting together, or separately, said statements were maliciously published and circulated.

It was alleged that at the time said check was displayed and commented upon, the appellant was a candidate for the Democratic nomination for Sheriff of Dawson County and that the appellees in accordance with an agreement between them and others unknown to the appellant maliciously and for the two-fold purpose of damaging the name of the appellant and blasting his good reputation in the community, circulated said check without his knowledge.

It was further alleged by appellant that said check was originally given by him to said M. M. Horton, who, at the time, was a deputy under him in the Tax Collector's office of Dawson County. That same was in payment of the deputy's salary for 1923, and that the check had subsequently been paid by the appellant. That by reason of the malicious publication of the check and the statements concerning the same, the appellant had suffered from such defamation great mental anguish and pain. That his credit was impaired by such statements made by the appellees who acted without regard to the truth and without making any effort to find out the truth concerning the check.

The action of the trial court in instructing a verdict for the defendants and

the judgment in response thereto is attacked from different angles but the appellant himself proceeds upon the theory that the alleged libelous and slanderous matters must be regarded as qualifiedly or conditionally privileged. He frankly states in his brief that "it must be admitted there is a qualified privilege * * *."

Granting for the present that the check and the language in reference thereto constitute libelous or slanderous matters, the above admission brings us to the controlling question presented by the appeal. That is, were such qualifiedly privileged communications uttered with the actual or express malice prerequisite to fixing liability on the part of the appellees, or either of them. Cranfill v. Hayden, 97 Tex. 544, 80 S.W. 609; 27 Tex.Jur. p. 675, sec. 49, et seq.

■ It becomes unnecessary to discuss at length the state of facts which ordinarily render certain communications qualifiedly privileged. Such communications comprehend all bona fide statements upon any subject matter in which the author has an interest, or with regard to which he has a duty to perform when made to another having a corresponding duty. The principle is that "The defendant who is acting under a conditional privilege is performing duties which the law regards as beneficial to the parties concerned and to society." 5 Texas Law Review, p. 357. In other words, the effect of such privileged occasion is to justify the communication when made without actual malice. 27 Tex.Jur. p. 649, sec. 35 et seq.

■ In substance, the undisputed facts of the instant case are as follows: The appellant was a candidate for the nomination for Sheriff of Dawson County. The appellees were voters therein. As such, it was both their right and duty to consider, investigate and discuss in a proper way the fitness of appellant, as well as his opponents, for the office sought by them. Obviously, the communications had reference to matters in which the appellees and the public generally had an interest. Such rights and interests extended to the official acts of the appellant even in former years. The check here involved was signed by him as Tax Collector of that county. The record contains no testimony that either of the appellees spoke concerning the check and its author in any harsh and vehement manner, or that either of them was actuated by sinister or corrupt motives toward the appellant. On the contrary, he described his relationship with each of the appellees as having been cordial and friendly. As to M. C. Lindsey it was "the very best" and as to McGuire it was "exceptionally so." As Tax Collector of Dawson County the appellant alleged and testified he issued and delivered the check to the payee, M. M. Horton, in consideration of a year's service rendered him (Cooksey) by said Horton when serving as his deputy tax collector. The check had no cancellation marks, nor was it stamped by the bank in a manner indicating payment, rejection or presentation. No agent of the bank (in Lamesa) testified that the check had never been presented for payment. It was, except as to its age, a bona fide negotiable instrument put in circulation by the appellant. On its face the instrument made no suggestion of a libel. If it could be said (which we think it cannot be) that the instrument reflected matters libelous per se, then it is obvious that the appellant himself was its author, and that he failed or neglected to repossess or recover the same.

Concerning the alleged payment of the check, the appellant's testimony is to the effect that said M. M. Horton in 1922 (prior to his going to work for appellant as deputy tax collector) borrowed $600 from appellant who advanced the loan by a check for that amount. That at the time (Feb. 10, 1924) the appellant gave the check here involved said Horton had not repaid the 1922 loan. That after issuing the 1924 check and delivering it to Horton he and Horton subsequently agreed that this 1924 check he satisfied by the cancellation of the pre-existing alleged debt of equal amount which Cooksey testified Horton had been owing him as the 1922 loan. That at such settlement Horton agreed to destroy or return the check to him. The check was not returned to appellant by Horton in his lifetime, and he died about five years after Cooksey went out of office and several years before the date of the alleged defamation in this suit.

The appellee Jimmie Stanfield is a brother of the appellee Mrs. Horton, and by reason of his relation to her and his interest in her estate, as well as from statements made to him (1925) by the deceased during his lifetime, said Stanfield had come into the possession of information that the check represented an unsatisfied obligation

on the part of Cooksey. There is no evidence that Stanfield, or his sister, knew anything to the contrary.

In some way the existence of the instrument had cropped out in the political campaigns in 1934, 1936, and possibly an earlier campaign in which Cooksey was a candidate. The transactions and matters here involved developed during his campaign in 1937 or 1938. There is no testimony that any of the appellees had any knowledge that the 1924 check had been paid or canceled as claimed by the appellant. Concerning such information on their part he frankly stated, "I don't know whether they knew anything about it or not."

In the light of the testimony generally it cannot be said that either of the appellees had any information or belief that the check was other than what it purported to be on its face, namely: an unsatisfied obligation. With that, the privileged nature of the occasion of said comments is not disputed by the appellant.

■ The occasion or comment being privileged, there arises no presumption of malice, but on the contrary, the law raises the presumption of good faith and want of malice. Stated differently, the privileged occasion rebuts an inference of malice prima facie. Here the burden rested on appellant (plaintiff) to show actual or express malice. Cranfill v. Hayden, supra; I. & G. N. R. Co. v. Edmundson, Tex.Com.App., 222 S.W. 181; Simmons v. Dickson, 110 Tex. 230, 213 S.W. 612, 218 S.W. 365; 27 Tex.Jur. 675, pars. 49, 50.

■ After a careful consideration of the testimony we readily conclude that there is no evidence of actual malice upon the part of either of the appellees in the utterances of the matters charged to them, respectively. Certainly there is no testimony of concerted action upon the part of the appellees to publish any defamation against appellant. There is a total lack of evidence of any conspiracy upon their part.

■ Further, if there be found in this testimony any statement suggestive of malice, concerted action by, or conspiracy upon the part of the appellees, then the nature of such suggestion is such as to bring it within the scintilla rule, and, therefore, amounts to no evidence whatever. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. It would amount to no more than a surmise or suspicion.

■ The law applicable to the facts reflected by this record is well stated in the following excerpt from 27 Tex.Jur. p. 667, sec. 45. It is there said:

"Generally speaking, comment on and criticisms of the acts and conduct of public men, including officials and candidates for office, are privileged if fair and reasonable and made in good faith. * * *

"A person who becomes a candidate for office puts his character in issue insofar as his qualification is concerned. His character and fitness for the position sought are a matter of public concern, and are proper subjects for discussion and fair and reasonable comment. Thus fair comment and criticism of the acts or conduct of an officer who is also a candidate are privileged if made in good faith and for the purpose of questioning his fitness for office, and this privilege may extend to statements in a letter written by one voter to another. But to be privileged the statements or comments must be pertinent to the issues; that is to say, that they must relate to the suitableness of the candidate for the office, and must be justified by the occasion; they must concern matters which would be appropriate for the electors to consider in making a selection for the office."

A fuller statement of the law with a concrete application of the same to substantially similar facts may be found in Snider v. Leatherwood, Tex.Civ.App., 49 S.W.2d 1107, by this court. See, also, numerous authorities cited and discussed in said opinion as well as those cited by the above text in support of the rules stated.

Being of the opinion that the trial court properly and correctly appraised the testimony bearing on either libel or slander, his action in instructing a verdict in favor of each of the defendants is approved, and the judgment of the trial court is affirmed.