## J. O. FITZJARRALD V. PANHANDLE PUBLISHING COMPANY, INCORPORATED.

No. A-2423. Decided February 22, 1950.
Rehearing overruled April 19, 1950.
(228 S. W., 2d Series, 499.)

88

*Hamilton & Deaver* and *Sam J. Hamilton,* all of Memphis, for petitioner.

The Court of Civil Appeals erred in holding conditionally privileged as fair comment on the official conduct of a public officer, the false statement published by the defendant in its issue of the Amarillo Times on April 29, 1948, because said statement was false and was against plaintiff as an individual and not as a public officer. Bell Pub. Co. v. Garrett Eng. Co., 141 Texas 51, 170 S. W. 2d 197; Cotulla v. Kerr, 74 Texas, 89, 11 S. W. 1058; San Antonio Light Pub. Co. v. Lewy, 113 S. W. 574.

*W. J. Bragg,* of Memphis, *Sanders, Scott, Saunders & Smith and Albert Smith* and *E. T. Scott,* all of Amarillo, for respondent.

The Court of Civil Appeals did not err in holding that the statement in question was a fair and reasonable comment, and that the article referred to a public officer and not a private citizen. Houston Press Co. v. Ferguson, 12 S. W. 2d 125; Express Printing Co. v. Copeland, 64 Texas 354, 358; Moore v. Davis, 27 S. W. 2d 153.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is a libel suit, filed by J. O. Fitzjarrald against Panhandle Publishing Company, Inc., to recover actual damages in the sum of $25,000.00 and exemplary damages in the sum of $10,000.00. The jury found that the petitioner was entitled to actual damages in the sum of $14,333.00. No exemplary dam-

ages were awarded petitioner. Judgment was entered by the trial court in favor of Fitzjarrald for the sum of $14,333.00, and respondent perfected an appeal to the Court of Civil Appeals at Amarillo. That court reversed the judgment of the trial court, and rendered judgment in favor of respondent. 223 S. W. 2d 635.

Petitioner alleged that at the time of the publication of the articles by respondent in its newspaper, The Amarillo Times, concerning petitioner, he was county attorney of Hall County; that said articles complained of were libelous, and were published with intent to injure him, and for the purpose of subjecting him to public hatred, contempt, and ridicule, and further, for the purpose of impeaching his honesty, integrity, and reputation, both as a private citizen and as a public official; that said statements published by respondent were false, defamatory, malicious, libelous, and therefore damaging to him, and were willfully and maliciously published with express malice towards petitioner, and for the purpose of inferring by innuendo that petitioner was wholly unfit to serve Hall County as county attorney. Petitioner further alleged that there was no just cause for respondent to make such vicious, false statements about him.

Respondent answered, in substance, that the publications about which petitioner complains were privileged, or at least conditionally privileged, in that they were a fair and reasonable report and comment about a matter of public interest and concern, and that such statements were published by respondent without malice, for general information, at a time when petitioner was serving as county attorney and was running for reelection, and that such publications do not create a cause of action for libel. Respondent also alleged that the matters complained of were true, or that respondent, after a careful conscientious inquiry in Hall County, believed them to be true at the time of their publication, and that the articles were not maliciously published, nor were any of the statements published with malice or wrongful intent, or with any intention whatever to injure petitioner. It was further alleged that the contents of a letter that Raymond Ballew sent to some 2500 voters in Hall County on April 19, 1948, making substantially the same statements that respondent had made in its publications, and which publications went into the homes of approximately 100 subscribers in Hall County. It was further pleaded that the statements complained of had been given wide publicity in Hall County generally, both in writing and orally, before such statements had been published in The Amarillo Times.

The facts of the case grew out of a political race in Hall County. During the year 1947 Raymond Ballew, a long-time resident of Hall County, had been several times convicted in the county court of that county for violating the Liquor Law, for which he paid fines totalling more than $8,000.00. He had announced for Sheriff of Hall County against the incumbent, Earl Hill. Raymond Ballew was conducting a vigorous campaign for the office of sheriff, and was attacking the manner in which the alleged law violators had been apprehended, and the manner in which the Hall County Court had been conducted. Ballew mailed out approximately 2800 circular letters to the voters of that county, in which letters he apparently criticized the sheriff, the county judge, and the county attorney of Hall County, all of whom were running for re-election.

A copy of this letter was sent to The Amarillo Times, and upon receipt of the letter two reporters were sent to Memphis, the county seat of Hall County, to check upon the letter and the political situation in that county. The reporters interviewed Ballew, Sheriff Hill, and several other citizens, including some Negroes. They tried to interview petitioner, but he declined to discuss with them the Ballew letter or the charges made therein. The management of The Amarillo Times thought the subject matter furnished a news story of interest to the public, and as a result published the three articles in question, along with some others. Petitioner based his claim upon the three articles published respectively on April 28, 1948, April 29, 1948, and August 9, 1948. Only a portion of the article published on April 29, 1948, was submitted to the jury. This article and the Ballew letter are set out in their entirety in the opinion of the Court of Civil Appeals (223 S. W. 2d 635), and to save space they will not be repeated here. The trial court submitted to the jury in paragraph 3 of its charge certain portions of the article published on April 29, 1948, as follows:

"You are further instructed that the article appearing in The Amarillo Times dated April 29th, 1948, headlined 'Memphis Political Clique Accused of Kangaroo Court,' a portion of which, to wit, 'But upon the hill the southeast section of town where the negroes live—at least eight negroes interviewed by newsmen told a story of living in terror of the Hall County Attorney and law enforcement officers. They declared sheriff's officers and the county attorney pay almost nightly visits to the hill. They said that Fitzjarrald once fired several shots close to the feet of a negro just to scare him.' is set out in paragraph 8 of the plaintiff's second amended original petition is, as a matter of law, a libel of the plaintiff J. O. Fitzjarrald, and that

malice on the part of the defendant, Panhandle Publishing Company, is imputed as a matter of law, to the defendant unless the defendant, Panhandle Publishing Company establishes by the greater weight of the evidence introduced in your hearing that the material charges appearing in such article relating to the plaintiff, J. O. Fitzjarrald, are substantially true, that is, are true in substance.

"Bearing in mind the foregoing instructions, please answer the following questions:

### "QUESTION NO. 1.

"From the greater weight of the evidence introduced in your hearing, do you find that the material charges appearing in the newspaper article mentioned in paragraph 3 of this charge relating to the plaintiff, J. O. Fitzjarrald, are substantially true? Answer Yes or No.
"Answer No."

### "QUESTION NO. 2.

"How much actual damage do you find, if any, should be awarded to the plaintiff, J. O. Fitzjarrald, by reason of the publication of the article of April 29, 1948? Answer in dollars and cents.
"Answer $14,333.00."

Question No. 3 reads:

"Was the newspaper article of April 29th, 1948, headlined 'Memphis Political Clique Accused of Kangaroo Court' published and circulated by defendant Panhandle Publishing Company with 'actual malice' toward the plaintiff J. O. Fitzjarrald? Answer Yes or No."

To this question the jury answered, "No." Therefore no exemplary damages were awarded petitioner.

Respondent filed a motion for an instructed verdict and also a motion for judgment non obstante veredicto, and both motions were overruled. Respondent also presented many exceptions to the trial court's charge, including the questions, explanations, and definitions.

Respondent attacked the judgment of the trial court on the ground that neither the article nor any part thereof was libelous, contending that the article and every part of it was at least conditionally privileged; and, further, that the sole condition of whether the article was privileged is based upon whether it

was published and circulated by respondent with actual malice towards petitioner. The jury found that the article had not been published and circulated by respondent with actual malice towards petitioner. Respondent contended in the Court of Civil Appeals that in view of such finding the trial court erred in not rendering judgment for respondent. The Court of Civil Appeals held that the article and every part of it referred to the acts of petitioner and other officials, and that it was conditionally or qualifiedly privileged, and that in view of this holding and the finding of the jury that no actual malice existed, it reversed and rendered the judgment of the trial court.

■ The trial court limited its question only to the alleged libelous statements appearing in the newspaper article copied in paragraph 3 of its charge; and since the trial court did not submit to the jury questions relating to other portions of the article, and no request was made by petitioner to submit other portions of the article, or any other articles published by respondent, this Court is limited to a consideration of the language contained in paragraph 3 of the court's charge.

The question presented here is whether the language printed without actual malice justifies the recovery of a judgment for libel in favor of petitioner and against respondent.

The Legislature of this State announced the rule as to what constitutes libel by the enactment in 1901 of Article 5430, of Vernon's Texas Civil Statutes, 1948, which reads:

"A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury."

The law has defined certain privileged matters that may be published by any newspaper without being liable in an action for libel. Article 5432, Vernon's Texas Civil Statutes, 1948, was originally enacted in 1901, Acts 27th Leg., chap. 26, p. 30, and was amended in 1919, Acts 36th Leg., chap. 25, p. 34, and was again amended in 1927, Acts 40th Leg., chap. 80, p. 121. This article now reads in part as follows:

"The publication of the following matters by any newspaper or periodical shall be deemed privileged and shall not be made the basis of any action for libel.

\* \* \* \* · \* \* \*

"4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

Article 5433, Vernon's Texas Civil Statutes, 1948, reads:

"Nothing in this title shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any now or at any time heretofore existing defense to a civil action for libel, either at common law or otherwise, but all such defenses are hereby expressly preserved."

■ Articles 5430, 5431, 5432, and 5433, Vernon's Texas Civil Statutes, 1948, clearly declare the policy of this State regarding the question of libel. The law protects the right of a citizen to defend his reputation and good name from libelous publications, and this right is zealously guarded. Bell Pub. Co. v. Garrett Engineering Co., 141 Texas 51, 170 S. W. 2d 197; Belo & Co. v. Looney, 112 Texas 160, 246 S. W. 777; Express Pub. Co. v. Keeran, Tex. Com. App., 284 S. W. 913. The law does not give newspapers the unrestricted right to publish statements about officers that are untrue and false, and in construing this law the courts have held that, "As a general rule a publication concerning a public officer, in order to be libelous per se, must be of such a character as, if true, would subject him to removal from office." Cotulla v. Kerr, 74 Texas 89, 11 S. W. 1058, 15 Am. St. Rep. 819; Nunn v. Webster, Tex. Com. App., 260 S. W. 157; 27 Tex. Jur., p. 606, sec. 12.

■ When a person is a candidate for a public office, and while he holds such an office, he thereby places his character in issue, in so far as his qualifications for the office are concerned. His character and fitness to hold the office are matters of public concern, and are proper subjects for discussion and fair and reasonable comment, which may be published for general information. The law authorizes "a reasonable and fair comment or criticism" of the acts and conduct of a person during his candidacy for office or during his official tenure, relating to his fitness for the office, and such comment or criticism is privileged if made in good faith. Express Printing Co. v. Copeland, 64 Texas 354; Express Pub. Co. v. Wilkins, Tex. Civ. App., 218 S. W. 614; Snider v. Leatherwood, Tex. Civ. App., writ dis-

missed, 49 S. W. 2d 1107; Light Pub. Co. v. Huntress, Tex. Civ. App., 199 S. W. 1168; Moore v. Davis, Tex. Civ. App., 16 S. W. 2d 380, affirmed Tex. Com. App., 27 S. W. 2d 153; Cooksey v. McGuire, Tex. Civ. App., 146 S. W. 2d 480; Houston Printing Co. v. Hunter, Tex. Civ. App., 105 S. W. 2d 312, approved by the Supreme Court 129 Texas 652, 106 S. W. 2d 1043; 27 Tex. Jur., p. 667, sec. 45; 53 C. J. S., p. 219, sec. 134b. The rule is also established in this State, "that a false statement of fact concerning a public officer, even if made in a discussion of matter of public concern, is not privileged as fair comment." Bell Pub. Co. v. Garrett Engineering Co., 141 Texas 51, 170 S. W. 2d 197.

Article 5432 now specifically provides that the publication of certain matters by any newspaper or periodical *"shall be deemed privileged and shall not be made the basis of any action for libel."* The Act was clearly designed to permit newspapers and magazines to obtain and publish information on public matters and regarding candidates for public office. The law also recognizes that an enlightened citizenry is necessary to maintain an honest and efficient government, and those who vote for candidates for office are entitled to have the facts relating to such candidates' character and fitness to hold office. In this case petitioner was County Attorney of Hall County, and was a candidate for re-election. It is undisputed that a bitter political fight was in progress in that county, as is convincingly shown by Ballew's letter. While Ballew was running for the office of sheriff, his letter shows that the candidate for the office of county attorney was also a target for his statements. In his letter he said: "I will not allow a county attorney to carry a gun around and pull it on Negroes just to scare them. I will not let a county attorney run the sheriff's office, nor will I try to run his." Unquestionably these statements about the county attorney and other officers were widely circulated in Hall County, and a copy of this letter was sent to The Amarillo Times. That a political situation of this kind would be interesting to the publisher of a newspaper and to the public is quite obvious. Two reporters were sent to Hall County to investigate, and Sheriff Hill and several other citizens, including some Negroes, were interviewed. The reporters undertook to interview petitioner and discuss with him the information they had gathered about the political situation in that county, but he declined to comment on the charges made in the letter circulated by Ballew or on the facts that they had gathered from others.

The Court of Civil Appeals in its opinion said: "It appears to us, after a careful consideration of the entire article, of that

portion of the same declared upon by appellee and submitted to the jury, together with the remainder of the article, and of the evidence concerning the same, that appellant gave the source of its information and the source of the statements contained in the article; that through its reporters, it interviewed the parties mentioned in the article, and some that were not mentioned, quoting them in the main, and gave a fair and impartial report of what each said; that appellant's reporters tried to interview appellee but he declined to comment on the matters further than to say he was not interested, which statement appellant quoted in the article. It further appears that appellant gave a fair report of both sides of a political campaign and did not vouch for the truthfulness by implication or otherwise of any of the statements made. It further appears that the article in question and every part of it was written in good faith and there is ample evidence to support the jury finding that no actual malice existed on the part of appellant."

■ The law provides that a reasonable and fair comment or criticism of the acts and conduct of a public officer or candidate for public office is privileged; but this rule does not apply where a newspaper not in good faith goes beyond the privilege afforded by law and publishes an article with malice. In passing upon the language complained of as libelous, it must be considered in the light of all the facts and circumstances under which it was used. Houston Printing Co. v. Hunter, Tex. Civ. App., 105 S. W. 2d 312, affirmed 129 Texas 652, 106 S. W. 2d 1043; Moore v. Leverett, Tex. Com. App., 52 S. W. 2d 252; Cranfill v. Hayden, 97 Texas 544, 80 S. W. 609; Guisti v. Galveston Tribune, 105 Texas 497, 150 S. W. 874, 152 S. W. 167.

■ The vidence shows that respondent published the article as a news item, and the jury found that it was published without malice. The article refers to petitioner as an officer, and the presumption of good faith obtained. Respondent in publishing the article was trying to give its readers a description of the political situation its reporters had found in Hall County. In order for petitioner to recover damages for the publication of a statement that was privileged, the burden was on him to prove and obtain a finding that respondent was actuated by malice in publishing the article. This Court has repeatedly held that malice cannot be inferred from the character of the language used, if privileged, without other evidence to prove it. Nunn v. Webster, Tex. Com. App., 260 S. W. 157; Express Pub. Co. v. Lancaster, Tex. Com. App., 285 S. W. 810; Simmons et al. v. Dickson, Tex. Com. App., 213 S. W. 612; International

& G. N. R. Co. v. Edmundson, Tex. Com. App., 222 S. W. 181; Enterprise Co. v. Wheat, Tex. Civ. App., 290 S. W. 212, writ dismissed; Moore v. Leverett, Tex. Com. App., 52 S. W. 2d 252; Bradstreet Co. v. Gill, 72 Texas 117, 9 S. W. 753, 2 L. R. A. 405; 13 Am. St. Rep. 768; Behee v. Missouri Pac. Ry. Co., 71 Texas 424, 9 S. W. 449; Express Pub. Co. v. Wilkins, Tex. Civ. App., 218 S. W. 614.

■ The trial court held that the portion of the article submitted to the jury in paragraph 3 of its charge was libelous per se. The Court of Civil Appeals disagreed with such holding, and held that the language used referred to the county attorney and other officials, and under the law was conditionally or qualifiedly privileged. Whether a publication is privileged or not is generally a question of law for the court to determine. If the language used in not ambiguous, or where the facts and circumstances surrounding the publication are undisputed, it is for the court to decide whether or not it was privilegled. Southern Pub. Co. v. Foster, Tex. Com. App., 53 S. W. 2d 1014; Houston Printing Co. v. Hunter, Tex. Civ. App., 105 S. W. 2d 312, affirmed 129 Texas 652, 106 S. W. 2d 1043; Express Pub. Co. v. Wilkins, Tex. Civ. App., 218 S. W. 614; 27 Tex. Jur., p. 686, sec. 52, and cases cited in footnotes. The issue of malice ordinarily is a question for the jury to determine. Dickson v. Lights, Tex. Civ. App., 170 S. W. 834; Behee v. Missouri Pacific Ry. Co., 71 Texas 424, 9 S. W. 449; 27 Tex. Jur., p. 689, sec. 52, and cases cited in footnotes.

■■ Article 5432 was enacted to soften the harsh rule that had subjected newspapers to damages for publishing certain matters, and authorized newspapers, without being liable for any action for libel, to publish "A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information." To hold under the undisputed facts of this case that the entire portion of the article contained in paragraph 3 of the court's charge was libelous per se would place a construction on Article 5432 not justified by the language used therein, and would thwart the very purpose for which the law was enacted.

The liberal rule relating to the privilege of newspapers to a reasonable and fair comment of the official acts of public officials does not apply to the publication of an article not true which would subject a public official to removal from office. Among the statements contained in paragraph 3 of the court's charge is the following: "They said that Fitzjarrald once fired several shots close to the feet of a negro 'just to scare him.' " If

the statement just quoted was true, the respondent had the right to publish it. If it was not true, it was libelous per se, because it was a ground for the removal of the official from office. Article 5970 of the statute authorizes a district judge to remove a county attorney from office for official misconduct. Article 5973 reads in part as follows: "By 'official misconduct,' as used herein with reference to county officers, is meant any unlawful behavior in relation to the duties of his office, wilful in its character, of any officer intrusted in any manner with the administration of justice, or the execution of the laws; * * *." If the foregoing statement was true, petitioner was subject to prosecution under the provisions of Articles 474, 480, and 480a, Vernon's Texas Penal Code, 1948.

■ The trial court was in error in holding that all the statements contained in paragraph 3 of the charge were libelous per se, because some of the statements were privileged. The Court of Civil Appeals erred in holding that all of the statements were privileged. However, this case must be reversed for other reasons. Respondent excepted to the court's charge and questions basically for the following reasons: (1) Because paragraph 3 contains several statements, all of which were held by the trial court to be libelous per se; (2) because Question No. 1 is multifarious, and submits to the jury that all the material charges in the article were true, and it deprived respondent of the right to have the jury pass upon each statement contained therein and to answer whether all or only some of the statements therein were true or false; and (3) because Question No. 3 authorized the jury to find the amount of damages for the publication of the entire article of April 29, 1948, and does not limit the consideration of the jury to those portions of the article not privileged.

If the pleadings and evidence in a case raise the issue as to whether an article published contains statements that are priviledged and statements that are libelous per se, proper questions relating to such statements should be submitted to the jury. All statements that are privileged should be submitted to the jury for them to determine whether they were published with malice, and all statements libelous per se should be submitted to the jury for them to determine whether they are true or false. Each statement should be submitted separately. Respondent had the right to have the jury pass upon each statement separately, and if damages were recoverable, the instruction of the court should have limited the damages recoverable to those resulting from the publication of the privileged statements found to have been published with malice and the publication of those statements

libelous per se found to be false. Bell Pub. Co. v. Garrett Engineering Co., 141 Texas 51, 170 S. W. 2d 197; Times Pub. Co. v. Ray, Tex. Civ. App., 1 S. W. 2d 471, affirmed Tex. Com. App., 12 S. W. 2d 165.

The judgment of the trial court and Court of Civil Appeals are reversed, and this cause is remanded to the trial court for further proceedings.

Opinion delivered February 22, 1950.

MR. JUSTICE GARWOOD, joined by Justices SMEDLEY and HART, concurring.

While concurring in the result of the majority opinion, I am reluctant to subscribe to certain important statements of law therein, which seem likely to cause difficulty in future cases. The statement to which I principally refer reads: "The liberal rule relating to the privilege of newspapers to a reasonable and fair comment of the official acts of public officials does not apply to the publication of an article not true which would subject a public official to removal from office." I fear that this statement confuses two distinct matters: (a) the character of the publication or charge as libelous per se, that is, actionable without proof by the plaintiff of actual malice of the defendant or proof of special damage to the plaintiff; and (b) the matter of privilege, which is a defense and comes into play only when it is determined that the publication is otherwise actionable. The fact that the publication charges an officer with an offense of the type indicated is indeed pertinent to (a) but not at all pertinent to (b). Publications made about public officials are treated differently than publications about private individuals in that even a rather vigorous and untrue condemnation of a public official as an official is not libelous per se unless it charges him with an offense for which he may be removed from office, whereas the same condemnation of a private individual might well be libelous per se. The point has a parallel in the law of slander, in which a general accusation of unchastity is actionable per se if the victim is a woman but otherwise if the victim is a man. This question is not one of the privilege of the writer or speaker, but of whether the words written or spoken are in law actionable even though there be no privilege. The privilege of "fair comment", or any privilege, for that matter, presupposes that the defamatory words are actionable of themselves and without need of the plaintiff to do more to make a case than to prove that they were published concerning him. Thus, if an official is said to be, for example, "an arrogant

despicable character that should not be allowed to hold office", the question of "fair comment" privilege probably does not arise, because no sufficient cause for removal from office is charged, though a similar publication regarding a person who is neither an official nor a candidate for public office might well justify recovery upon mere proof that it was made concerning the plaintiff, and the defendant would accordingly have to plead and prove his privilege or suffer judgment. On the other hand, cases are at least theoretically possible, in which the publication in effect charges something that would justify removal of the officer—victim from his office, yet, being in the nature of a comment, might be privileged as "fair comment". In such a case the defendant, if he properly presented the matter of his privilege, would not be liable unless the plaintiff demonstrates in turn that the privilege was abused through actual malice or otherwise. But the defendant cannot establish this privilege unless the "fair comment" is indeed comment, as distinguished from a statement of fact. Bell Pub. Co. v. Garrett Engineering Co., 141 Texas 51, 170 S. W. 2d 197. See also Annotation in 110 A. L. R. 412. That is the critical issue in the present case, clearly presented in the very point on which the writ of error was granted by the words "same being a false statement of fact against plaintiff" and also much discussed on the oral argument. The statement that petitioner Fitzjarrald was said to have fired a pistol at the feet of a negro "just to scare him" was a statement of fact rather than a comment and therefore not privileged as "fair comment", under the authorities mentioned. I consider the Bell Pub. Co. case as holding that a statement of facts does not become a "comment" of the publisher merely because the latter publishes it as coming from a third-party source. But the point of whether the fact thus published was or not ground for removal of petitioner as a public officer has nothing to do with whether the statement was actually a statement of fact or a comment or with the further question of whether the comment, if any, was "fair".

The other proposition in the opinion that disturbs me is the broad statement, "* * * that malice cannot be inferred from the character of the language used, if privileged, without other evidence to prove it." In the first place the point thus made is unrelated to our decision, since the jury has found there was no malice, and such finding is not questioned. Secondly, it may be doubted if the court's proposition is sound in the broad form stated. Aside from "fair comment" cases, may there not be situations in which the occasion is conditionally privileged beyond doubt—such as an answer of an ex-employer of the plain-

tiff to an enquiry about the plaintiff from a prospective employer—but in which the false and defamatory statement itself is so out of proportion to or unrelated to the legitimate purposes of the communication as to indicate malice- or amount to an "abuse of privilege"—a broader term often used in lieu of malice? The question is an intricate one, and while the court's proposition does find supporting language in some of the decisions cited, there seems no good reason to commit ourselves to it when our actual decision does not so require.

Opinion delivered February 22, 1950.

Motion for rehearing overruled April 19, 1950.