Chester ROOT, Appellant,

v.

REPUBLIC NATIONAL BANK OF DAL-
LAS, Independent Executor & Trustee of
Estate of Walter Murray, Deceased, Appel-
lee.

No. 7245.

Court of Civil Appeals of Texas.

Texarkana.

June 14, 1960.

V. K. Wedgworth, Mineral Wells, for ap-
pellant.

W. O. Gross, Mineral Wells, Stanley E.
Neely, Dallas, for appellee.

CHADICK, Chief Justice.

This is a libel case. Judgment of the trial
court dismissing plaintiff's petition is re-
versed and the case is remanded.

This court action is an outgrowth of a
story published Saturday, June 1, 1957 in
the "Mineral Wells Index", a newspaper,
and distributed in Palo Pinto County, Tex-
as, reading as follows:

"'Bond Made In Case In County
Court.

"'Chester G. Root was charged in
County Court Friday with assault with
a prohibited weapon, and unlawfully
carrying a prohibited weapon. He was
held in city jail and later transferred
to county jail in Palo Pinto pending his
efforts to make bond, and was released

late Friday afternoon after making bond.

" 'The charges grew out of Root's attempt to stop a city street working crew from carrying out orders on street repairs near the Root property in northwest Mineral Wells.

" 'In another case, the state of Texas versus Root, arising out of a charge in county court charging Root with the destruction of a fence belonging to Henry Hester, the decision of the case was recently affirmed by the Court of Criminal Appeals.' "

Chester Root, plaintiff in the trial court and appellant in this appeal, sued Walter Murray, now deceased, and for whom the Republic National Bank, the executor and trustee of his estate, has been substituted, alleging the foregoing newspaper account libeled him. His original petition is his only pleading necessary to be noticed in reaching a decision. In it, among other things, he pled that the newspaper article taken as a whole was defamatory and was knowingly, designedly and maliciously untrue, maliciously unfair, and grossly partial; that it was not published as an item of legitimate news or as an unbiased report of the proceedings of any court of justice, but was published knowingly, intentionally and designedly for the sole purpose of injuring Root's good name, reputation, and general standing in the community and to bring him into disrepute and expose him to public hatred, contempt and ridicule. Particularly did he allege as absolutely false the published statements that he was held in jail pending his effort to make bond and that charges against him grew out of his attempt to stop a city street working crew from carrying out orders on street repairs near his property.

In paragraphs 5 and 7 of his original petition Root pleads his version of the facts of the episode reported in the newspaper article. The following excerpt contains his allegation in this respect:

"Root was placed in jail a few minutes before 9 o'clock A.M., on May 31st, 1957, but no charge whatever was entered on the blotter against him, and although he was hurt, and in great pain, he was held incommunicando until about 1,30 p. m., when a physician finally came and ordered him to the hospital, where he was taken under guard. At about 3:00 o,clock that afternoon Root's attorney went to the Chief of Police and demanded that some charge be made against Root in order that bond could be made, but was told that no charge had been made, and that none would be made. * * *

" * * * and the said Walter Murray, * * * also well knew that for a long time the city of Mineral Wells had been attempting to take from Plaintiff, Chester Root, out of Lot No. I, Block No. 3, Slaughter & Barber North Addition to the City of Mineral Wells, said lot being the private property of plaintiff, enough land to provide for a street, and to take said property, without dedication, purchase or condemnation.

"And * * * well knew, when said article was published on June 1st, 1957, that the city of Mineral Wells had, by actual force, taken plaintiff off his own property; that the said working crew was not repairing any street, but was on Root's property, said lot No. I, Block 3, Slaughter & Barber North Addition, and that plaintiff was not interfering with repairs on any street, but was merely attempting to protect his own property."

The appellee, as defendant in the trial court, directed seven special exceptions to Root's original petition; all were sustained by the trial court and the case dismissed. For the purpose of this appeal it is only necessary to notice special exceptions 1, 2, and 3, as the action on the other four is not the basis of the dismissal. Special exception numbers 1 and 2 plead the provi-

sions of Article 5431 Vernon's Ann. Texas Civ.St., and assert that Root's original petition failed to state a claim against the defendant, as it showed upon its face that the statements contained in the newspaper article were true, or were substantially true. Special exception No. 3 invokes the provisions of Article 5432, and asserts that Root's petition fails to state a claim in that the statements of the newspaper article constitute: 1). a fair, true, and impartial account of proceedings in a court of justice; 2). a fair, true and impartial account of official proceedings authorized by law in the administration of the law; and 3). insofar as such statements consist of expressions of opinion they constitute a reasonable and fair comment upon the official acts of public officials and other matters of public concern published for general information, and that publication of the article was absolutely privileged and cannot be made the basis of any action for libel.

◼ The test of Root's petition by the special exception necessitates inquiry under special exceptions 1 and 2 as to whether or not Root's petition shows on its face the truth of the alleged defamatory statements in the published account. With reference to special exception No. 3 the inquiry is whether or not the original petition shows on its face that publication of the account was not actuated by malice. Respecting this third special exception the appellee's contention that the published article was absolutely privileged under Article 5432 can not be sustained. Article 5432 affords a qualified privilege. See Bell Pub. Co. v. Garrett Engineering Co., 141 Tex. 51, 170 S.W.2d 197, opinion adopted; Fitzjarrald v. Panhandle Pub. Co., Inc., 149 Tex. 87, 228 S.W.2d 499, and cases cited therein.

The task then is to examine plaintiff's original petition and consider the facts pled therein. Looking to the extracts of Root's pleading of fact previously reproduced, and the legitimate inferences arising therefrom it is seen that nothing more is pled or admitted than that Root was placed in jail about 9 a. m., May 31, 1957, without being charged with any offense against the law, and was at a physician's order taken to the hospital under guard; and later at about 3 p. m., Root's attorney was told by the Chief of Police that no charge had been made against Root or would be made. It also relates that the City of Mineral Wells had been trying to acquire without dedication, purchase or condemnation enough land from Root for a street, and the city by actual force had taken Root off his property and continues that the street working crew was not repairing a street but was on Root's property, and that Root was not interfering with repairs to a street, but was merely attempting to protect his own property on June 1, 1957.

Comparison of these admitted facts with the newspaper account pled will not sustain a contention that the truth of the facts stated in the newspaper article are apparent on the face of the original petition, or that malice did not actuate the publication of the newspaper article. To illustrate, the published statement that Root was charged with an assault with a prohibited weapon finds no factual support in any statement, admission or inference contained in Root's pleading. Nowhere in Root's pleading may the truth of this statement be found to have been admitted, nor that publication thereof was not actuated by malice. The published report cannot be construed to be a fair, true, and impartial account of court or other official proceedings, or a reasonable and fair comment on or criticism of official acts or other matters of public concern published for general information on the basis of allegation of fact or inference therefrom contained in Root's pleading. It well may be that such statement and comment is true and the account published is fair and impartial, but establishment of such issues depends upon evidence outside of Root's original petition and the statements, admissions and inferences it contains.

◼ With respect to appellee's contention that the privilege status afforded news-

paper publications by Article 5432 is a question of law, the true rule is stated in Fitzjarrald v. Panhandle Pub. Co., Inc., supra [149 Tex. 87, 228 S.W.2d 505], to be, "if the language used is not ambiguous or where the facts and circumstances surrounding the publication are undisputed, it is for the court to decide whether or not it (the published defamation) was privileged." (Interpolation added.) In this case the facts are not undisputed. It is the allegation of Root's original petition that the article as a whole was false, and publication was actuated by malice. Root's pleading of facts created some internal inconsistencies in his original petition but no special exception was made on that basis.

It conclusively appears that special exceptions 1, 2 and 3 allege the existence of facts not supplied or admitted by Root's pleading, and on the basis of the existence of such extrinsic facts, challenges Root's right of recovery. Under present rules of procedure the factual matter necessary to sustain the special exceptions not appearing on the face of Root's original petition, extrinsic proof, if it exists, must be ignored in passing upon the sufficiency of Root's original petition to state a cause of Action. See Riley v. Gray, Tex.Civ.App., 275 S.W. 2d 171, n. w. h.; Moore v. Leverett, Tex. Com.App., 52 S.W.2d 252, opinion adopted; Express Pub. Co. v. Wilkins, Tex.Civ.App., 218 S.W. 614, n. w. h. For a discussion of the functions and problems presented by this form of special exception see 2 McDonald's Tex.Civ.Practice, Secs. 7.19 and 7.22. The special exceptions discussed were improvidently sustained.

The judgment of the trial court is reversed and the case remanded for trial.