Jim **BRADY**, Appellant,

v.

**COX ENTERPRISES, INC., d/b/a The Austin American–Statesman, et al., Appellees.**

No. 3–88–293–CV.

Court of Appeals of Texas, Austin.

Nov. 29, 1989.

Rehearing Denied Jan. 24, 1990.

Jim Brady, Austin, pro se.

R. James George, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellees.

Before CHADICK, COLEMAN and BISSETT, JJ.*

COLEMAN, Justice (Retired).

Jim Brady, appellant, sued Cox Enterprises, Inc. doing business as the Austin American–Statesman, and Bruce Hight, a reporter employed by that newspaper, for damages which he says he suffered as a result of allegedly libelous articles appearing in that newspaper and written by Bruce Hight.

The trial court sustained the defendants' motion for summary judgment and entered a take nothing judgment. The ground or grounds on which the trial court relied were not specified. The judgment is affirmed.

On January 30, 1988, while Brady was a member of this Court and a candidate for reelection, the American–Statesman published an article that dealt with complaints that had been filed with the State Commission on Judicial Conduct. Substantially, the same charges were made by Mr. An-

stey in an affidavit signed on May 16, 1986, and filed in public records as part of a mechanic's lien.

The newspaper article bore the headline: "Judge accused of bullying businessman." The article stated in part:

State appeals court Justice Jim Brady, hit with a public reprimand Thursday for a press release promoting his own ruling, threatened to use the power of his office to avoid paying an air-conditioning repair bill of about $4,500, an Austin businessman has charged.

Robert Anstey of Davis Air Conditioning & Heating Inc. also said in a 1986 sworn affidavit that Brady had suggested that the company falsify invoices so the entire cost of repairs would be covered by insurance.

Brady, a member of the 3rd Court of Appeals in Austin, has denied Anstey's charges, which were filed as part of a mechanic's lien on the property. Both men said this week that the dispute will be handled in arbitration.

The State Commission on Judicial Conduct, which issued the public reprimand against Brady, has looked into Anstey's charges but has not taken action.

The commission issued the public reprimand against Brady for his distribution of a press release in October in which he boasted about a 3rd Court ruling in a libel case for which he had written the majority opinion.

Brady said in a prepared statement Friday that he would appeal the reprimand, and he questioned the timing of the commission's action because he faces a renomination battle in the March 8 Democratic primary.

\*   \*   \*   \*   \*   \*

"He said he would use state employees assigned to his office to snow us with pleadings and to swear that the judge had never authorized the work done," Anstey said in his affidavit.

\*   \*   \*   \*   \*   \*

---

* Before T.C. Chadick, Justice (retired), Supreme Court of Texas; Tom F. Coleman, Chief Justice (retired), First Court of Appeals; Gerald T. Bissett, Justice (retired), Thirteenth Court of Appeals; sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003 (1988).

Anstey also said in the affidavit that Brady claimed he had not authorized repair of all the air conditioners but made the offer to pay the balance in exchange for an agreement to falsify the invoices.

\*　　\*　　\*　　\*　　\*　　\*

Brady this week said that the dispute was "a private matter involving a piece of property I was trustee of" and that Anstey went "overboard in his statements and made false statements."

Anstey's charge that he had solicited false invoices was "absolutely false," Brady said. And he denied threatening to use the powers of his office against Davis Air Conditioning: "Absolutely not—just pure libel, or slander."

Brady was not available for comment. Friday, but he issued a statement denying he had violated the Code of Judicial Conduct in the press release matter. He said he would appeal the reprimand.

■ The movant in a summary judgment proceeding must establish his entitlement to a summary judgment on the issues he expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law. The non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support summary judgment. However, the non-movant must expressly present to the trial court, by written answer or response to the motion, issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as an error on appeal. The movant does not have to negate all possible issues of law and fact that could be raised by the non-movant in the trial court but were not. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979).

The movant asserts that the motion for summary judgment should have been granted, and was granted, on two independent theories, each of which is sufficient to sustain the judgment: (1) The story was privileged as a matter of law; and (2) no

fact issue was raised as to whether Hight knew Anstey's statements were false, or had actual doubts about such statements and published the statements in spite of those doubts.

In his formal response, Brady states that there exists genuine issues of material fact in the cause of action. He states that affidavits attached to his answer conclusively establish that the "defamatory falsehood" published by defendants was done with malice and with a reckless disregard of whether the statements were false or not.

In his affidavit, Mr. Brady stated that prior to the publication of the story he met with Mr. Hight and two editors of the American–Statesman newspaper and during the meeting discussed the dispute between Brady and Davis Air Conditioning, Inc. Brady stated that he informed them that the statements made by Anstey were libelous and false. Brady further stated that the reporter had previously called the Judicial Conduct Commission of Texas and told its executive director that Brady had been in violation of the canons of judicial ethics. An affidavit of Ron Weddington stated that on February 11, 1988, he held a press conference at which time he read a statement which was attached to the affidavit as Exhibit "A," and that he handed out an affidavit made by Richard Coker which was attached as Exhibit "B." The purported copy of the affidavit of Richard Coker was not signed. Weddington does not swear that the matters stated by Coker were true. Coker states his opinion that Anstey overcharged Mr. Brady for the work he did on his air conditioning units and his opinion that Mr. Anstey's reputation for honesty and integrity is bad.

In his brief, Brady asserts that his affidavit proves conclusively that appellees knew that the statements made by Anstey were at least suspect and likely totally false. He further contends that the affidavit clearly raises fact issues of both malice and reckless disregard of whether the quoted sources were false or not.

■ To sustain a defamation cause of action, a public official must prove that the defendant (1) published a false statement of fact; (2) that was defamatory concerning the public official; and (3) that the statement was made with actual malice. *See Channel 4, KGBT v. Briggs*, 759 S.W.2d 939 (Tex.1988). It follows, therefore, that if the newspaper established as a matter of law that one of these three elements of the cause of action cannot be proven, the trial court properly rendered a summary judgment in favor of the defendant.

The story accurately reported the affidavit that Anstey filed with both the State Commission on Judicial Conduct and as a public record as a part of a mechanic's lien. It also reported Brady's claim that Anstey was not telling the truth. The statement alleged to be false is Anstey's statement in his affidavit. The newspaper accurately reported the facts of the dispute.

Section 73.002, Tex.Civ.Prac. & Rem. Code (1986), provides:

(a) The publication by a newspaper or other periodical of a matter covered by this section is privileged and is not a ground for a libel action....

(b) This section applies to:

(1) a fair, true, and impartial account of:

(A) a judicial proceeding, ...

(B) an official proceeding, other than a judicial proceeding, to administer the law;

(C) an executive or legislative proceeding

.     .     .     .     .

(2) reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information.

■ The question of whether this publication is privileged under this statute is a matter of law for the Court. *Fitzjarrald v. Panhandle Pub. Co.*, 149 Tex. 87, 228 S.W.2d 499, 505 (1950). The publication in question reported "an official proceeding" within the meaning of the statute. The publication was privileged and forms a suf-

ficient basis for the trial court's judgment. *See Denton Pub. Co. v. Boyd*, 460 S.W.2d 881 (Tex.1970).

"Criticism regarding the official acts or conduct of public officials and candidates for public office, or their qualifications for office, is privileged and not libelous. Whatever pertains to the qualification of a candidate for public office is certainly a legitimate subject for discussion and comment in a political campaign." (citation omitted) *Ramiro Casso, M.D. v. Othal E. Brand*, 776 S.W.2d 551 (Tex.1989) (Gonzalez, J., concurring in part, dissenting in part).

Appellees also assert that the case is controlled by the doctrine of "neutral reportage" based on the First Amendment to the United States Constitution, which is grounded on the idea that in the case of public officials and public figures, charges made against such persons by apparently responsible people should not be filtered through a news organization's own views concerning the accuracy of the underlying charge. In *Edwards v. National Audubon Society, Inc.*, 556 F.2d 113, 120 (2nd Cir.), cert. denied sub nom. *Edwards v. New York Times Co.*, 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977), the Court said,

What is newsworthy about [the charges at issue] is that they were made ... The public interest in being fully informed about controversies that often rage around sensitive issues demands that the press be afforded the freedom to report such charges without assuming responsibility for them.

In *Brasher v. Carr*, 743 S.W.2d 674, 682 (Tex.App.1987), *rev'd*, 776 S.W.2d 567 (Tex. 1989), the Court stated,

A limited privilege of accurate republication was recognized in *Edwards v. National Audubon Soc'y, Inc.*, 556 F.2d 113 (2d Cir.1977). The *Edwards* privilege was limited to accurate re-publication by a newspaper of statements made by a responsible prominent person or organization about a public figure. A privilege of accurate re-publication has not, to our knowledge, been recognized in

Texas courts, although it has been suggested. Note, *Protecting the Public Debate: A Proposed Constitutional Privilege of Accurate Republication,* 58 Tex. L.Rev. 623 (1980). We decline to accept at this stage in the litigation Thiel's proposed privilege and hold that summary judgment cannot be affirmed on that ground.

■■■■ To prevail at trial, the plaintiff must show that the defendant was actuated by actual malice by making a false and defamatory statement of fact about the plaintiff. Actual malice, as used in defamation cases, is a term of art and does not include ill will, spite or evil motive, but rather requires evidence that the defendant in fact entertained serious doubts as to the truth of the publication. The plaintiff must offer clear and convincing affirmative proof to support a recovery. *Casso v. Brand, supra.* Attached to the motion for summary judgment was an affidavit by Bruce Hight. In this affidavit he stated that in mid-January, 1988, he was given a packet of copies of lawsuits, judgments, and other legal papers covering the last 15 to 20 years that involved Justice James Brady which had been compiled by the campaign of Justice Robert Campbell of the Texas Supreme Court in 1986 when Brady had challenged him in the Democratic Primary.

The Hight affidavit continued: "Most of the papers involved suits against Justice Brady claiming that he owed the plaintiff money, and most appear to result in judgments against him ... The one that stood out was a mechanic's lien and an accompanying affidavit involving Davis Air Conditioning." This was the 1986 affidavit that accused Brady of threatening to use the powers of his office to tie Davis up in court and avoid paying the bill, and of offering to work with Mr. Anstey to make sure that the insurance company paid all the money Mr. Anstey owed him. This is the affidavit on which the article was based.

In the affidavit Mr. Hight stated that he had talked with Mr. Anstey about the charges and that he discovered the matter had not been settled and that Anstey had been in contact with the State Commission on Judicial Conduct about the charges. He then talked to Robert Flowers, Executive Director of the Judicial Conduct Commission. Flowers confirmed that the committee was aware of Mr. Anstey's charges and said that they were under investigation. On January 28th, Justice Brady was publicly reprimanded by the Commission because of an unrelated matter. Hight stated that he made repeated attempts to contact Justice Brady at his office, his campaign headquarters, and his home. He left messages making it clear that not only did he seek comment from him about the public reprimand but that he needed to ask him about the Anstey matter. In response he received a written statement responding to the public reprimand. He again checked with the Travis County clerk's office and found that the Mechanic's Lien was still on file and Mr. Anstey told him that there had been no change in his dispute with Justice Brady.

The final paragraph of the affidavit states:

> I concluded that the Anstey affidavit, which was given under oath, was true and that Mr. Anstey was telling the truth about what happened. I believed Mr. Anstey's affidavit, I believe what I said in the story was true and had no doubts about the truth of any of the facts set out in the story.

The attachments to the Weddington affidavit cannot be considered summary judgment evidence because neither of them is an affidavit. Hight's affidavit establishes that he did not believe the allegations in the Anstey affidavit were false and did not act with reckless disregard as to their truth or falsity in repeating those allegations in his article. There is no evidence which would permit the conclusion that the defendants in fact entertained serious doubts as to the truth of the publication. *See Carr v. Brasher,* 776 S.W.2d 567 (Tex.1989).

The judgment is affirmed.